**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
TOKIO MARINE AND NICHIDO
FIRE INSURANCE CO., LTD., as subrogee
for Mitsubishi Motors Credit of America, Inc.,

               Plaintiff,

      - against -

ROSALIE CALABRESE and
LOUIS FACCIPONTI,

               Defendants,
-----------------------------------------------------------X
ROSALIE CALABRESE and
LOUIS FACCIPONTI,

               Third-Party Plaintiffs,

      - against -

RUSSO & APOZNANSKI, and MONTFORT,
HEALY, MCGUIRE & SALLEY, LLP

               Third-Party Defendants,
-----------------------------------------------------------X
RUSSO & APOZNANSKI,

               Cross-Claimant,

      - against -

MONTFORT, HEALY, MCGUIRE &
SALLEY, LLP

               Cross-Claim Defendant,
-----------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 07-2514 (JS) (AKT)

MONTFORT, HEALY, MCGUIRE &
SALLEY, LLP,

                  Cross-Claimant,

        - against -

RUSSO & APOZNANSKI

                Cross-Claim Defendant,
---------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.     PRELIMINARY STATEMENT

Presently before the Court is Defendant/Third-Party Plaintiffs Rosalie Calabrese and

Louis Facciponti's motion to amend the Third-Party Complaint pursuant to Fed. R. Civ. P. 15(a).

Third-Party Plaintiffs seek to plead additional claims of legal malpractice against Third-Party

Defendants Russo & Apoznanski ("Russo") and Montfort, Healy, McGuire & Salley, LLP

("Montfort Healy"). In addition, Third-Party Defendant Montfort Healy has cross-moved to

strike Third-Party Plaintiffs' expert report and preclude the expert's testimony. For the foregoing

reasons, Third-Party Plaintiffs' motion to amend is DENIED. Further, Third-Party Defendant

Montfort Healy's cross-motion is GRANTED in part and DENIED in part.

## II.     BACKGROUND

On December 21, 1999, Defendant Calabrese entered into a lease agreement with

Plaintiff Mitsubishi Motors Credit of America, Inc. ("MMCA") for a 2000 Mitsubishi Galant.

On January 6, 2003, Facciponti, with the permission of Calabrese, was operating the vehicle

when it was involved in an accident with a vehicle driven by Andrew Andreou. On October 20,

2004, Andrew Andreou (and his spouse, Margaret) commenced a personal injury action against

Calabrese and Facciponti ("Andreou Action"). This action also sought damages from MMCA on a theory of vicarious liability. At the conclusion of the liability phase of the action, the jury found Facciponti 100% liable. Just after the conclusion of the damages phase, and before the jury returned their verdict, the action settled for the total sum of $1.5 million. Of the $ 1.5 million, $100,000 was contributed by Calabrese and Facciponti through their insurer, GEICO, and $1.4 million was contributed by MMCA through its insurer, Tokio Marine and Nichido Fire Insurance Co. ("Tokio Marine"). In consideration for the $1.4 million settlement (hereafter the "Andreou Settlement") from MMCA and Tokio Marine, Andrew and Margaret Andreou executed a General Release.

On June 21, 2007, Plaintiffs initiated this action against Calabrese and Facciponti on an indemnification claim to recover their $1.4 million contribution towards the Andreou Settlement. After receiving three extensions to the deadline for joinder of additional parties and amendment of pleadings, Calabrese and Facciponti filed a Third-Party Complaint against Russo and Montfort Healy, their counsel in the Andreou Action.[1] According to Third-Party Plaintiffs, Geico provided their defense, as per the contractual agreement between the parties. Third-Party Defendant Russo was assigned to the defense and continued as counsel throughout the discovery phase and Third-Party Defendant Montfort Healy was thereafter retained as trial counsel. Pursuant to the Third-Party Complaint, one cause of action in legal malpractice is brought against both Russo and Montfort Healy. Both causes of action are premised on the following alleged breaches of

---

[1] The original Case Management and Scheduling Order was amended on December 13, 2007, which set the deadline of February 18, 2008 to join parties or amend pleadings. Calabrese and Facciponti were thereafter granted extensions of this deadline on February 12, March 10, and April 9, 2008. On the April 16, 2008 deadline, Calabrese and Facciponti filed their Third-Party Complaint. However, they amended the Third-Party Complaint as a matter of course, pursuant to Rule 15(a)(1).

counsels' duty to provide competent legal services: (1) failing to conduct proper discovery that would have uncovered and allowed Third-Party Plaintiffs to obtain the information that Andrew Andreou maintained in his Dentrix program; (2) failing to follow proper New York State procedure to ensure that Dr. Goldman would not be precluded from testifying for the defense; and (3) failing to request, demand, or negotiate that the settlement agreement include Tokio Marine and MMCA's releasing Third-Party Plaintiffs from any liability.[2]

## III.   MOTION TO AMEND

### A.   Standard of Review

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). A court "should freely give leave when justice so requires" and such leave is in the court's discretion.[3] *See* Fed. R. Civ. P. 15(a); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000).

---

[2] Counsel for Third-Party Defendant Montfort Healy indicated during oral argument held on August 9, 2011, that Third-Party Plaintiffs have since abandoned the theory of legal malpractice premised on an alleged failure to request, demand, or negotiate that the settlement agreement include Tokio Marine and MMCA's releasing Third-Party Plaintiffs from any liability.

[3] The Court notes that on December 13, 2007, an Amended Case Management and Scheduling Order was entered setting a February 18, 2008, deadline for joinder and amendment of pleadings. *See* DE 11. After three subsequent requests by Third-Party Plaintiffs to extend the date were granted, the final deadline was set for April 16, 2008. *See* Electronic Order dated April 10, 2008. On April 16, 2008, Third-Party Plaintiffs filed their Third-Party Complaint. Since there was no further Court-ordered deadline for amending the Third-Party Complaint, the Court need not conduct an analysis pursuant to Rule 16(b). *See Stonewall Corp. v. Conestoga Title Ins. Co.*, No. 04-CV-9867, 2010 WL 647531, at *2 n.1 (S.D.N.Y. Feb. 18, 2010).

Notwithstanding the foregoing principle, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234 (2d Cir. 1995) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); *SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004) (under Rule 15(a), "leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent") (emphasis in original). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *see also European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502-03 (E.D.N.Y. 2001); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-8 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

## B. Discussion

In Third-Party Plaintiffs' proposed Second Amended Third-Party Complaint, they seek to allege the following additional breaches of Third-Party Defendants' duty to provide competent legal services: (1) failing to retain a vocational rehabilitation expert to report on, testify to, or rebut Andreou's loss of earnings claims; (2) failing to retain a forensic accountant to counter Andreou's claims regarding the value of Andreou's dentistry practice; and (3) failing to retain an orthopedist and neurologist to conduct an independent medical examination of Andreou

subsequent to surgery performed in December 2005. The Third-Party Defendants, separately and/or collectively, argue that leave to amend would: (1) be futile; (2) cause undue delay; (3) be in bad faith; and (4) cause undue prejudice. Each argument will be addressed in turn.

### 1. Futility

Third-Party Defendants allege that the proposed claims are futile on two grounds: (1) the claims are barred by the applicable statute of limitations; and (2) the claims fail to state a cause of action.

### a. Statute of Limitations

A proposed amendment is futile when it fails to state a claim upon which relief can be granted. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990). "[An] amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations." *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). For claims grounded in legal malpractice, the statue of limitations is three years. N.Y. C.P.L.R. § 214(6). In such actions, the claim accrues when the malpractice is committed, not when it is discovered. *See Scantek Med., Inc. v. Sabella*, 583 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) (citing *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166, 726 N.Y.S.2d 365, 750 N.E.2d 67 (2001)). In this case, the proposed new claims of malpractice – centered on Third-Party Defendants' failure to retain certain experts to refute the damages in the Andreou Action – accrued, at the latest, on July 6, 2006. The underlying Andreou Action settled on July 6, 2006, directly after the completion of the damages phase of the trial. Therefore, generally speaking, those claims related to any alleged malpractice during the Andreou Action must have been brought by July 6, 2009. However,

pursuant to the "relation back" doctrine:

> A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of occurrences, to be proved pursuant to the amended pleading.

N.Y. C.P.L.R. § 203(f).

In this action, the Court finds that the proposed additional claims arise out of the same conduct and set of transactions set out in the original pleading. The Third-Party Complaint, filed on April 16, 2008, states that Third-Party Defendants had a duty to render professional and competent legal services in the defense of Third-Party Plaintiffs in the Andreou Action. Although the precise legal malpractice claims in the original pleading address three specific alleged omissions by Third-Party Defendants, the previously pleaded claims cover a period of alleged misconduct spanning pre-trial discovery through post-trial settlement. Accepting Third-Party Defendant Montfort Healy's argument that the original pleading only put them on notice of the three specifically pleaded omissions would narrow the reading of the relation back doctrine to the point of rendering it ineffective. Since the newly proposed claims arise from Third-Party Defendants' representation of Third-Party Plaintiffs during the Andreou Action, the Court finds that the claims relate back to the proposed pleading and are deemed to have been interposed on April 16, 2008. *See Scantek Med., Inc.*, 583 F. Supp. 2d at 489 (finding that the claims in the amended third party complaint are deemed to have been asserted on the date of the original third party complaint if "the claims arise out of the same conduct and transactions" set out in the original pleading). Therefore, the proposed amendments are not barred by the statute of limitations.

*b.*     *Failure to State a Claim*

A determination of futility on the merits is governed by the same standards as a motion to

dismiss under Rule 12(b)(6). *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566,

604 (2d Cir. 2005); *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Under

Rule 12(b)(6), the court must accept as true the factual allegations set forth in the complaint and

draw all reasonable inferences in favor of plaintiff. *Cleveland v. Caplaw Enter.*, 448 F.3d 518,

521 (2d Cir. 2006); *Nechis v. Oxford Health Plans*, 421 F.3d 96, 100 (2d Cir. 2005). Moreover,

the review is limited to facts stated in the Complaint or documents attached to the Complaint as

exhibits or incorporated by reference. *Id.* A complaint should not be dismissed unless it does

not set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (to withstand a motion

to amend, a complaint must "raise a right to relief above the speculative level"). "A complaint is

inadequately pled 'if it tenders naked assertion[s]' devoid of 'further factual enhancement.'"

*Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods Corp.*, No. 09 Civ. 8285, 2010 WL 3910590, at

*4 (S.D.N.Y. September 29, 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

In New York, a legal malpractice action must allege: "(1) attorney negligence; (2) which

is the proximate cause of a loss; and (3) actual damages." *Achtman v. Kirby, McInerney &*

*Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). Furthermore, a plaintiff must allege the existence

of an attorney-client relationship. *Stonewall Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d

203, 208 (S.D.N.Y. 2010). "To find negligence, a court must find sufficient evidence that the

defendant-attorney's conduct 'fell below the ordinary and reasonable skill and knowledge

commonly possessed by a member of his profession.'" *Id.* at 209 (quoting *Grago v. Robertson*,

49 A.D.2d 645, 646, 370 N.Y.S.2d 255 (3d Dep't 1975). Furthermore, "[t]o establish the elements of proximate cause and actual damages for a claim of legal malpractice, the plaintiff must show that 'but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome.'" *Stonewall Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010) (quoting *Zarin v. Reid & Priest*, 184 A.D.2d 385, 386, 585 N.Y.S.2d 379 (1st Dep't 1992)).

Third-Party Defendant Montfort Healy initially contends that the decision of whether to retain certain experts during the course of a litigation is a discretionary act which cannot form the basis of a malpractice action. While it is true that malpractice claims alleging an "error in judgment" or involving a "selection of one among several reasonable courses of action" do not constitute malpractice and can be determined on a motion to dismiss (*see Rosner v. Paley*, 65 N.Y.2d 736, 738, 492 N.Y.S.2d 13, 481 N.E.2d 553 (1985); *see also Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 393 (S.D.N.Y. 2000)), the failure of Third-Party Defendants to retain experts to challenge the damages proffered in the underlying personal injury action do not necessarily fall within the purview of circumstances which courts have found the lack of malpractice as a matter of law. To the contrary, the Court notes that counsel's failure to retain expert witnesses has been found to be a basis for a legal malpractice claim which survived a motion to dismiss. *See Flutie Bros. LLC v. Hayes*, No. 04 Civ. 4187, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006). In *Flutie Bros.*, the court held that plaintiff had "sufficiently alleged negligent conduct" in that the defendant, *inter alia*, failed to retain expert witnesses. *Id.* Although the failure to retain expert witnesses was but one of many alleged failures of counsel in *Flutie Bros.*, the case, at a minimum, provides some support for the notion that the failure to retain expert witnesses can

serve as a basis for a malpractice claim.  Likewise, the fact that the Court was unable to locate

any authority stating the contrary proposition further supports the allowance of such claims.  The

only cases the Court found involving legal malpractice lawsuits premised on the failure to submit

expert evidence were dismissed on summary judgment.  *See Provenzano v. Pearlman, Apat &*

*Futterman, LLP*, No. 04-CV-5394, 2008 WL 4724581, at *5 (E.D.N.Y. Oct. 24, 2008); *Caires v.*

*Siben & Siben, LLP,* 2 A.D.3d 383, 384, 767 N.Y.S.2d 785 (2d Dep't 2003).  Such cases do not

support the position that legal malpractice actions premised on the failure to retain experts failed

to state a claim in the first instance.

Moreover, the case cited by Third-Party Defendants for the proposition that an attorney

cannot be held liable for the discretion he or she exercised, *Hanlin v. Mitchelson*, 623 F. Supp.

452 (S.D.N.Y. 1985), is inapposite.  Not only are the allegations of malpractice dissimilar in

*Hanlin*, but the court there was deciding a motion for summary judgment.  *See Hanlin*, 623 F.

Supp. at 455-56.  Furthermore, the precedential value of *Hanlin* has been diminished by the

subsequent Second Circuit opinion reversing, in part, the summary judgment findings of the

district court.  *See Hanlin v. Mitchelson*, 794 F.2d 834, 838-40 (2d Cir. 1986).  While Third-

Party Defendants' decision not to retain the expert witnesses identified by Third-Party Plaintiffs

in the Andreou Action may have been a reasonable course of action and subject to dismissal on

summary judgment, under the present circumstances of the instant case, the Court finds that the

alleged failure to retain expert witnesses can support a cause of action for legal malpractice.

Third-Party Defendant Montfort Healy also contends that the proposed Second Amended

Complaint includes only broad conclusory statements, wholly lacking factual assertions relating

to a claim for legal malpractice.  In addition, Montfort Healy argues that the proposed

amendments fail to assert any causal link between the failure to retain experts and the settlement of the underlying action. Instead, Montfort Healy claims that Third-Party Plaintiffs' allegation of a causal link is nothing more than an attorney's conclusion which is not supported by any proof from either a vocational rehabilitation expert, a forensic accountant, an orthopedist, or a neurologist. Joining in the futility argument regarding the proposed amended pleading, Third-Party Defendant Russo alleges that the amendments "have absolutely no possibility of surviving summary judgment" since Russo no longer represented Third-Party Plaintiffs at the time the newly alleged misconduct took place.

These arguments proffered by Third-Party Defendants are substantially flawed in that they attempt to make interchangeable the governing standards of a motion to dismiss, used in analyzing a motion to amend, with those utilized in deciding a summary judgment motion. "In making futility determinations [on a motion to amend], the court must limit itself to the allegations in the complaint, as well as to any documents attached to the complaint as exhibits, or incorporated by reference." *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04 Civ. 2867, 2006 WL 6217754, at *3 (S.D.N.Y. Mar. 31, 2006); *see also Permatex, Inc. v. Loctite Corp.*, 03 Civ. 943, 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) (explaining that "materials outside of the pleadings . . . cannot be considered on a motion for leave to amend"). Therefore, the exhibits provided to the Court by Russo evidencing when its representation of Third-Party Plaintiffs ceased in the underlying matter and the findings of economist David Duffus cannot be considered by this Court in deciding the pending motion. Such evidence can only be submitted and considered on a motion for summary judgment. Likewise, Montfort Healy's contention that the newly pled allegations are not supported by adequate proof is a

summary judgment argument, and as such, is premature. Lastly, the proposed amendments are not "conclusory statements lacking factual assertions." Each new claim by Third-Party Plaintiffs addresses a specific omission which allegedly occurred during the Andreou Action.

Admittedly, the proposed amended pleading is not well amplified. However, this does not mean that the pleading does not meet the *Iqbal* standard. The Third-Party Plaintiffs allege that the breaches in the duty owed to them by Third-Party Defendants were the proximate cause of the unreasonable settlement of the Andreau Action for $1.5 million. "[S]ettlement of the underlying claim does not preclude a subsequent action for legal malpractice in situations where settlement was effectively compelled by mistakes of counsel." *Schweizer*, 93 F. Supp. 2d at 394. Contrary to Montfort Healy's position, the proposed pleading does assert a causal link between the failure to retain experts and the settlement. The proposed amended pleading states that no expert testimony was offered to counter the valuation of the damages of Mr. Andreou in the underlying action, and, therefore, a settlement was struck at the close of the damages trial. Although it is true that "[m]ere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case in malpractice" (*see Luniewski v. Zeitlin*, 188 A.D.2d 642, 643, 591 N.Y.S.2d 524, 526 (2d Dep't 1992)), taking the allegations as true, the Court finds that Third-Party Plaintiffs have sufficiently alleged that they suffered actual damages in having to settle the case for more than it was worth. Despite the fact that the exact amount of damages is unknown at this juncture, the damages suffered are still "real" and are "readily measurable in economic terms" *Schweizer*, 93 F. Supp. 2d at 395-96. Based on the above, the Court does not find the proposed amendments to be futile.

## 2.     *Bad Faith*

Third-Party Defendant Montfort Healy also alleges that the proposed amendments are made in bad faith since the motion: (1) comes on the eve of the filing of summary judgment motions; and (2) was delayed in order to unduly prejudice Montfort and prolong the litigation.

Contrary to Montfort Healy's belief, neither the timing of Third-Party Plaintiffs' motion to amend nor the procedural history of this case leading up to, and including, the filing of the pending motion evidences bad faith on the part of Third-Party Plaintiffs.  Montfort Healy erroneously represents that the motion comes on the eve of filing summary judgment motions. Third-Party Plaintiffs' motion to amend was filed on June 17, 2011, while the deadline set by this Court for the parties to file summary judgment papers was August 19, 2011.  The Court finds that the two month period at issue does not equate to a filing on the "eve" of a deadline.  Since Montfort Healy's motion for summary judgment is not even filed at this juncture, the cases cited by Montfort which denied a motion to amend in light of a pending motion for summary judgment are not only inapplicable but were decided on grounds of prejudice.  *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (denying motion to amend on prejudicial grounds where the new claims were based on a new set of operative facts, the motion was made after the time for discovery had run, and defendant's motion for summary judgment was on file); *Bymoen v. Herzog, Heine, Geduld, Inc.*, No. 88 Civ. 1796, 1991 WL 95387, at *2 (S.D.N.Y. May 28, 1991) (denying motion to amend on grounds that "the amendment would be particularly prejudicial where discovery has already been completed and defendant has already filed a motion for summary judgment" and the new claim appears to be "in anticipation of an adverse ruling on the one remaining claim").  The one case pointed out by Montfort Healy's counsel which actually

13

found bad faith, *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300 (S.D.N.Y. 1996), is distinguishable. In *Lee,* the court found that the motion to amend was made in bad faith based on the following analysis:

> Only when defendants moved for summary judgment-and demonstrated that plaintiffs were in serious danger of losing the case because plaintiffs could not link the ice cubes to a breach of duty by the owners or their agents-did plaintiffs first suggest that the weather, the handrail, the carpeting or the metal stripping played a role. This circumstance indicates that the failure to advance these other factors earlier was the product of bad faith.

*Lee*, 916 F. Supp. at 304. As noted above, no motion for summary judgment has yet been filed. Although Montfort Healy may be confident that this case will be disposed of on summary judgment, the present circumstances are not similar to the circumstances argued in *Lee* nor have Third-Party Plaintiffs exhibited the type of conduct found troublesome in *Lee*. Notwithstanding allegations of delay by the Third-Party Plaintiffs in moving to amend and any purported prejudice the delay caused to the Third-Party Defendants, the Court does not find any evidence of bad faith here.

### 3. *Delay and Prejudice*

Third-Party Defendants further argue that Third-Party Plaintiffs have failed to meet their burden in providing a plausible excuse for the more than three year delay in seeking leave to amend. Instead, Third-Party Defendants assert that the facts regarding the parties have not changed and no new evidence has been uncovered in discovery. Furthermore, Third-Party Defendants maintain that they would be unduly prejudiced should Third-Party Plaintiffs be permitted to amend the complaint three years after the pleading was last amended (and after the close of discovery) since discovery (both fact and expert) would have to start anew on these

additional claims.

As a general rule, mere delay, "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *accord Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993). While a court cannot deny a motion to amend purely on the grounds of delay, where "a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." *State Farm Mut. Auto. Ins. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 147 (E.D.N.Y. 2007) (quoting *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983) *aff'd*, 730 F.2d 910 (2d Cir. 1984)); *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (concluding that the moving party has the burden of providing a satisfactory explanation for a delay).

"In gauging prejudice, [courts] consider, among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Predictably, prejudice tends to increase with delay. *See Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996); *see also Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) ("[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.").

In this action, the sole explanation offered by Third-Party Plaintiffs for the more than three year delay in seeking to amend is that their retained expert, Stuart Gartner, uncovered additional theories of legal malpractice only after he reviewed the file and prepared his expert report. The Court does not find this explanation sufficient to satisfy the Third-Party Plaintiffs' burden of showing some valid reason for their delay in moving to amend. As Third-Party Defendant Russo succinctly argues, "[a]t all times, defendants were free to obtain a legal expert to review their case." The slow-paced progression of this case provided Third-Party Plaintiffs ample time to review the documents in their possession and to consult an expert in order to ascertain whether there were additional meritorious claims. Third-Party Plaintiffs cannot rely on those cases which granted motions to amend based on the fact that the proposed additional claims were the product of information uncovered through discovery from the opposition. *See Tokio Marine Fire & Ins. Co. v. Emp'rs. Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir. 1986) (allowing for amendment where the proposed affirmative defense was "the object of discovery"); *State Farm*, 246 F.R.D. at 148 (allowing for amendment after two-and-a-half years based on the fact that the "foundation for the amendments was laid during discovery"). Here, Third-Party Plaintiffs are not seeking to amend based on newly obtained information during discovery. Rather, they are seeking to amend based on information that was in their possession for several years prior to their making the instant motion. The fact that Third-Party Plaintiffs waited to have an expert review their files is not a valid or sufficient reason to explain or excuse the delay.

However, even removing from consideration Third-Party Plaintiffs' explanation for the delay in filing the motion to amend, given the posture of this case and the consequences of the amendment, Third-Party Plaintiffs' motion to amend must nonetheless be denied. Specifically,

the Court finds that the delay in seeking to amend coupled with the prejudice to Third-Party Defendants if additional claims were allowed to go forward at this late stage warrants a denial of Third-Party Plaintiffs' motion. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 727 (2d Cir. 2011) (concluding that "the fact that there may have been good reason for [plaintiffs] to have acted as they did is not alone sufficient to discount the significant prejudice resulting from permitting them to file their amended complaint").

The Court points out that Third-Party Plaintiffs served their expert report on May 13, 2011. Therefore, at the latest, Third-Party Plaintiffs were aware of these "uncovered" additional theories as of that date. It is both logical and reasonable to conclude that Third-Party Plaintiffs were aware of Mr. Gartner's findings well before the production of his expert report assuming the normal exchange of information between parties and their experts before a final report is issued. Nevertheless, Third-Party Plaintiffs took over a month to seek leave to file their proposed Second Amended Complaint. Moreover, Third-Party Defendants maintain, and Third-Party Plaintiffs do not contest, that all the underlying information necessary to make the proposed amendments was known and available to Third-Party Plaintiffs since the beginning of the Third-Party action. In a case such as this, where the present litigation is based on alleged malpractice in a previous action, the circumstances surrounding the prior representation are known by the allegedly aggrieved party and/or are readily obtainable.

Furthermore, allowing the proposed amendments to go forward would require the Third-Party Defendants to expend *significant* additional resources to conduct discovery, not to mention further delay in the resolution of this dispute. Not surprisingly, the Third-Party Plaintiffs seek to downplay the additional discovery which would be necessary while the Third-Party Defendants

seek to amplify what would be needed.  The fact of the matter is that significant additional resources would have to be expended in order to conduct the additional discovery needed.  With the three additional proposed claims, depositions would likely have to be reopened, new depositions would have to be taken and the number of experts Third-Party Defendants would have to retain would increase, potentially by as many as four.  In fact, Third-Party Plaintiffs acknowledge that experts in vocational rehabilitation and forensic accounting would now become necessary.

Lastly, these amendments would also further delay the resolution of the original dispute, filed over four years ago.  Third-Party Plaintiffs contend that Third-Party Defendant Montfort Healy's discovery motions were the basis of over 19 months of delays.  However, Third-Party Plaintiffs do not explain how Montfort Healy's motion to compel documents in any way prevented Third-Party Plaintiffs from diligently exploring all potential claims against Third-Party Defendants during this period of time.  While it is true that the burden of conducting additional discovery does not automatically equate to undue prejudice (*see Ruggles v. Wellpoint, Inc.*, 687 F. Supp 2d 30, 36 (N.D.N.Y. 2009), The Court finds that the three-year delay in making this application and the resulting prejudice to the Third-Party Defendants in terms of the expenditure of significant additional resources to defend against these proposed new claims rises to the level of undue prejudice.  The motion to amend is therefore denied.

## IV.    MOTION TO STRIKE EXPERT REPORT/PRECLUDE EXPERT TESTIMONY

With regard to the cross-motion to strike the expert report of Stuart F. Gartner and preclude any opinion testimony by Gartner, Third-Party Defendant Montfort Healy presents two primary arguments: (1) the expert report fails to comply with Rule 26(a) of the Federal Rules of

Civil Procedure and should therefore be precluded under Rule 37; and (2) Stuart Gartner's expert testimony is inadmissible under Federal Rules of Evidence 702 and 403.

### A.    The Expert Report

Third-Party Defendant Montfort Healy claims that Stuart Gartner's expert report contains only conclusory statements and opinions, the basis of which are not set forth in the report. Montfort Healy further argues that the report fails to provide a causal link between the alleged failures and the settlement of the underlying action. Finally, Montfort Healy contends that the expert report goes beyond the scope of the Third-Party Complaint. For these reasons, Montfort Healy requests that the report be stricken and the testimony of Stuart Gartner be precluded, or alternatively, that those aspects of the expert report which do not conform to the allegations in the pleading be stricken and all testimony on those external matters be precluded.

Rule 26 of the Federal Rules of Civil Procedure, which governs the disclosure of expert testimony, sets forth six requirements that an expert witness must include in his or her respective expert report. *See* Fed. R. Civ. P. 26(a)(2)(B). One such requirement is that the report contain "a complete statement of all opinions the witness will express and the basis and reason for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Pursuant to Rule 37, "a court may refuse to allow testimony on a matter that a party failed to include in an expert report 'unless the failure was substantially justified or is harmless.'" *In re MTBE Prods. Liab. Litig.* (*New York v. Exxon Mobil Corp.*), 643 F. Supp. 2d 471, 477 (S.D.N.Y. 2009) (quoting Fed R. Civ. P. 37(c)(1)). However, sanctions under Rule 37, including preclusion because of its drastic consequences, have been determined by the Second Circuit to be discretionary, and courts have not ordered preclusion even where the failure to disclose was neither justified nor harmless. *See Design Strategy, Inc. v. Davis*, 469

F.3d 284, 297-98 (2d Cir. 2006) (nothing that preclusion under Federal Rule 37 is not automatic);

*Conte v. Newsday, Inc.*, No. CV 06-4859, 2011 WL 2671216, at *1 (E.D.N.Y. July 7, 2011)

("Preclusion for violation of Rule 26(a) is not mandatory. Rather, courts in this Circuit have

recognized that preclusion is a 'harsh sanction.'"); *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607

(S.D.N.Y. 2004) ("Courts in this Circuit recognize that preclusion of evidence pursuant to Rule

37(c)(1) is a drastic remedy and should be exercised with discretion and caution."). While

"complete disclosure is strongly encouraged, the court retains broad discretion to determine

whether a report is substantially complete, whether the opposing party was harmed by an

omission, and whether any sanction is warranted."[4] *In re MTBE*, 643 F. Supp. 2d at 477 (citing

*Hein v. Cuprum, S.A. de C.V.*, 53 Fed. Appx. 134, 136 (2d Cir. 2002). Therefore, "courts may

strike expert reports if they are insufficiently detailed and complete to satisfy Rule 26(a)(2)."

*Conte*, 2011 WL 2671216, at *4.

    To support its argument that the expert report fails to state the basis for Stuart Gartner's

alleged conclusory opinions, Montfort Healy cites *Atkins v. County of Orange*, 372 F. Supp. 2d

377 (S.D.N.Y. 2005) for the proposition that an expert report is deficient if it fails to include the

underlying conclusions on which the expert's opinions are based, or merely contains "bald

conclusions." *See Atkins*, 372 F. Supp. 2d at 395. As an initial matter, although the court in

*Atkins* found that the expert report at issue was deficient and failed to comply with Rule 26, the

court nevertheless determined that preclusion was not an appropriate remedy. *Id.* at 397. By

---

[4] In determining whether preclusion under Rule 37 is warranted, courts consider the
following factors: "(1) the party's explanation for the failure to comply with the [disclosure
requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice
suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4)
the possibility of a continuance." *Softel, Inc. v. Dragon Med. and Scientific Commc'n, Inc.*, 118
F.3d 955, 961 (2d Cir. 1997).

contrast, in this case, the Court finds that Stuart Gartner's report sufficiently complies with the disclosure requirements of Rule 26(a)(2). As such, the Court need not address the question whether sanctions under Rule 37 are warranted.

Under the heading "**ANALYSIS**," Gartner opines in his report that "[t]he aforementioned failures demonstrate that [Russo] and [Montfort Healy] failed to exercise the ordinary and reasonable skill and knowledge commonly possessed by a member of the legal profession, and that the attorney's breach of that duty proximately caused the plaintiff to sustain actual and ascertainable damages." Diane K. Kanca Aff. in Opp'n to Mot. for Leave to Amend the Third-Party Compl. ("Kanca Aff."), Ex. F at 10. Prior to offering these opinions, Gartner, through his review of documents from the Andreou Action as well as documents obtained in this matter, identifies several "inadequacies" in the defense of Third-Party Plaintiffs in the Andreou Action. *Id.* These inadequacies are subsequently discussed in greater detail within the report. It is expressly stated in the report that these inadequacies serve as the basis and reasoning supporting Gartner's opinion that the representation of Russo and Montfort Healy fell below the accepted standards of the legal profession and that "a proper defense would have altered the result of the prior action." *Id.* at 11.

Notwithstanding the above, Montfort Healy alleges that the report neither demonstrates *why* the alleged failings were a deviation from acceptable standards nor asserts a causal link between the alleged failings with the settlement of the underlying action. In addition, Montfort Healy contends that Gartner did not rely upon any consultation with the very experts whom he opines should have been utilized in the underlying action. The Court finds these arguments to be misplaced under a Rule 26(a)(2) determination. Accepting Montfort Healy's arguments would

require expert reports to contain more than what is demanded by Rule 26(a)(2). "Ideally, an expert report would contain every fact, conclusion, and detail of the planned testimony." *In re MTBE*, 643 F. Supp. 2d at 482. However, Rule 26(a)(2)(B) "does not limit an expert's testimony simply to reading his report. . . . The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Id* (citation omitted). While Gartner's report is not all-inclusive, it cannot be deemed to be substantially incomplete. Moreover, Montfort Healy's contentions "go more to the admissibility and weight of the expert report[ ] than to [its] satisfaction of Rule 26(a)(2)'s requirements." *Conde*, 2011 WL 2671216, at *3.

In light of the fact that the Court does not find any violation of Rule 26(a)(2), there is no need analyze whether preclusion under Rule 37 is warranted. However, "[t]he fact that the expert reports are not precluded for violation of Rule 26(a) should be distinguished from the question of their admissibility under Federal Rule of Evidence 702. *Conde*, 2011 WL 2671216, at *4. "Whereas Rule 26(a) guards against the presentation of sketchy and vague expert reports that provide little guidance to the opposing party as to an expert's testimony, Rule 702 guards against the presentation of insufficiently reliable evidence to the finder of fact." *Id.*

### B.      Admissibility

Montfort Healy also maintains that Third-Party Plaintiffs' expert testimony is inadmissible under Fed. R. Evid. 702. As such, Montfort Healy argues that the expert report should be stricken and the testimony of Gartner be precluded.

Under Rule 702, an expert's testimony will be considered admissible if it assists the trier of fact and is (1) based upon sufficient facts or data; (2) the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. It is a well-accepted principle that the requirements of Rule 702 are liberally applied. *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). District courts have a "gatekeeping" role in ensuring that expert testimony satisfies Rule 702, and therefore, enjoy considerable discretion in deciding the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Even if an expert's testimony meets the requirements of Rule 702, a court still retains discretion to exclude that expert's testimony if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

One of the grounds upon which Montfort Healy challenges Gartner's testimony is its reliability. In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court provided a nonexclusive list of factors to consider when determining the reliability of proposed expert testimony. *Daubert*, 509 U.S. 593-94. Such factors include: "(1) whether the proposed theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593-94) (internal quotations and citations omitted). However, expert testimony in a legal malpractice action does

not lend itself to the scientific and "technical concerns expressed by *Daubert*." *LNC Invs. Inc. v. First Fidelity Bank*, No. 92-CV-7584, 2000 WL 1024717, at \*4 (S.D.N.Y. July 25, 2000); *see also Kumho Tires*, 526 U.S. at 141-42 ("*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."). Montfort Healy's sole example of how the report is unreliable – namely, that Gartner's report fails to include even a broad statement that would demonstrate that he relied upon the opinions of a vocational rehabilitation expert, a forensic accountant, a neurologist or an orthopedist that their testimony could have aided the defense of the underlying action – challenges the weight of the evidence as opposed to its admissibility. Other that this particular contention, Montfort Healy fails to identify any other reason why the report is unreliable other than to generally assert that the report is based solely on "conjecture and speculative assumptions" and makes "bold legal conclusions."

Montfort Healy also argues, in conclusory fashion, that Gartner's testimony is irrelevant. The Court disagrees. The expert testimony being offered by Gartner – specifically that Third-Party Defendants' conduct fell below the acceptable degree of care owed and that such negligence was the proximate cause of actual damages – is not only relevant, but necessary. *See Kranis v. Scott*, 178 F. Supp. 2d 330, 334 (E.D.N.Y. 2002) (finding that "[i]n most legal malpractice actions, the plaintiff must introduce expert testimony in order to establish the standard of care in the legal profession and to testify as to whether the defendant's acts or omissions negligently deviated from that standard and whether such negligence was the proximate cause of any damages to plaintiff"); *see also LNC Invs. Inc*, 2000 WL 1024717, at \*3.

As is the case for all testimony, expert testimony must bear some relevance to an issue in the case. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful."). In the Court's view, there is no question that any expert testimony related to acts or omissions set forth in the Third-Party pleading and charged against the Third-Party Defendants (*i.e.*, their failure to conduct proper discovery and follow proper New York State procedure), are relevant.

However, in light of the Court's ruling on Third-Party Plaintiffs' motion to amend, portions of the Gartner report go beyond the issues in this case. Specifically, Third-Party Plaintiffs cannot claim that Third-Party Defendants' failure to retain certain experts in the underlying action is a basis for legal malpractice. Likewise, Gartner's expert report, opining that such conduct fell below the accepted standards of the legal profession, is not part of this case. Furthermore, the probative value of allowing such expert evidence while precluding the underlying legal malpractice claims such evidence would support is substantially outweighed by the danger of unfair prejudice, confusion of the issues and the potential for misleading the jury.

## V. CONCLUSION

For all the foregoing reasons, Third-Party Plaintiffs' motion seeking leave to file a Second Amended Third-Party Complaint is DENIED. In addition, Third-Party Defendant Montfort Healy's cross-motion to strike Third-Party Plaintiffs' expert report and to preclude the expert's testimony is DENIED with respect to those allegations contained in the Amended Third-Party Complaint and GRANTED with respect to those allegations set forth in the proposed Second Amended Third-Party Complaint.

Stuart Gartner has 15 days to serve an amended expert report which complies with the

rulings in this Order.  The Court is scheduling a Telephone Conference for December 20, 2011 at

11:30 a.m. to discuss all remaining pre-trial deadlines.


**SO ORDERED.**

Dated: Central Islip, New York
      November 28, 2011

                         /s/ A. Kathleen Tomlinson
                         A. KATHLEEN TOMLINSON
                         U.S. Magistrate Judge