UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
TOKIO MARINE AND NICHIDO FIRE
INSURANCE CO., LTD., as Subrogee, and
MITSUBISHI MOTORS CREDIT OF AMERICA,
INC., as Subrogor,

                           <u>MEMORANDUM & ORDER</u>
              Plaintiffs,      07-CV-2514(JS)(AKT)

       -against-

ROSALIE CALABRESE and LOUIS FACCIPONTI,

              Defendants.
--------------------------------------X
ROSALIE CALABRESE and LOUIS FACCIPONTI,

              Third-Party
              Plaintiffs,

       -against-

RUSSO & APOZNANSKI, as in house counsel
for and employee of Government
Employees Insurance Company (GEICO),
and MONTFORT, HEALY, McGUIRE & SALLEY,
LLP,

              Third-Party
              Defendants.
--------------------------------------X
APPEARANCES
For Plaintiffs:        Matthew Kory Finkelstein, Esq.
                  London Fischer LLP
                  59 Maiden Lane
                  New York, NY 10038

For Defendants:        Carl S. Sandel, Esq.
                  Drew William Sumner, Esq.
                  Joan A. Reyes, Esq.
                  Morris Duffy Alonso & Faley
                  Two Rector Street
                  New York, NY 10006

```
For Russo & Apoznanski:   Diane K. Kanca, Esq.
                          Mark J. Sarro, Esq.
                          Edward Griffin Warren, Esq.
                          The McDonough Law Firm, L.L.P.
                          145 Huguenot Street
                          New Rochelle, NY 10801

                          Frank T. Cara, Esq.
                          The Judlau Companies
                          26-15 Ulmer Street
                          College Point, NY 11354

For Montfort, Healy,      Argyrios Petropoulos, Esq.
McGuire & Salley LLP:     Ralph A. Catalano, Esq.
                          James P. Connors, Esq.
                          Jared Andrew Kasschau, Esq.
                          Rebecca Jeanne Waldren, Esq.
                          William Louis Schleifer, Esq.
                          Catalano Gallardo & Petropoulos, LLP
                          100 Jericho Quadrangle, Suite 326
                          Jericho, NY 11753
```

SEYBERT, District Judge:

Pending before the Court are motions for summary judgment filed by Plaintiffs Tokio Marine and Nichido Fire Insurance Co., Ltd. ("Tokio Marine") and Mitsubishi Motors Credit of America ("MMCA," and together with Tokio Marine, "Plaintiffs") (Docket Entry 138), Defendants/Third-Party Plaintiffs Rosalie Calabrese and Louis Facciponti ("Defendants") (Docket Entry 139), and Third-Party Defendants Montfort, Healy, McGuire & Salley, LLP ("Montfort Healy") (Docket Entry 140) and Russo & Apoznanski ("Russo") (Docket Entry 145). For the following reasons, Plaintiffs' and Defendants' motions are DENIED, Russo's motion is GRANTED, and Montfort Healy's motion is GRANTED IN PART and DENIED IN PART.

I.  The Lease Agreement

In or around December 1999, Defendant Calabrese ("Calabrese") entered into a lease agreement (the "Lease") with KEB, Inc. d/b/a Wantagh Mitsubishi ("KEB") for a 2000 Mitsubishi Galant (the "Vehicle"). (Defs. 56.1 Counterstmt. to Pls. 56.1 Stmt. ¶ 2; Shim Aff.[2] Ex. A, Lease § 9.) Section 1 of the Lease provided as follows:

> AGREEMENT TO LEASE. The Lessee(s) (called "I") and the Lessor (called "you") signing at the bottom of this page agree to lease the Vehicle described below as stated in this Lease . . . . The disclosures in this Lease are made on behalf of you and Mitsubishi Motors Credit of America Inc. ("MMCA"), to which you plan to assign this Lease.

(Shim Aff. Ex. A, Lease § 1.) Upon execution of the Lease, KEB assigned to Plaintiff MMCA "all right, title, and interest in and to the Vehicle and this Lease, subject to the terms of the

---

[1] The following facts are drawn from the parties' Local Rule 56.1 Statements ("56.1 Stmt.") and Counterstatements ("56.1 Counterstmt."), to the extent that they are supported by admissible evidence, and the exhibits referenced therein. Any material factual disputes are noted.

[2] "Shim Aff." refers to the affidavit and exhibits at Docket Entry 138.

Retail Lessor Agreement between Lessor and MMCA." (Shim Aff. Ex. A, Lease § 9.)[3]

The Lease also contained the following indemnification provision (the "Indemnification Provision"):

> I agree to indemnify you (that is, I will pay you) and hold you harmless for all losses, damages, claims, injuries and expenses (including attorney's fees) that result from: (a) this Lease, (b) the manufacture, selection, delivery or possession of the Vehicle, or (c) the condition, maintenance, use or operation of the Vehicle. My agreement in this Item will survive termination of this Lease and repossession of the Vehicle.

(Shim Aff. Ex. A, Lease § 19.)

Calabrese and MMCA executed the Lease on or around December 21, 1999 (Shim Aff. Ex. A, Lease § 9), and Calabrese took possession of the Vehicle. Pursuant to Section 5 of the Lease, Calabrese took out an insurance policy with the Government Employees Insurance Company ("GEICO") which provided for, _inter alia_, coverage for bodily injury up to $100,000. (Russo 56.1 Stmt. ¶ 11; Shim Aff. Ex. A, Lease § 5; Pls. 56.1 Stmt. ¶ 14.)

## II. The State Court Action

On January 6, 2003, Defendant Facciponti ("Facciponti") was driving the Vehicle with Calabrese's

---

[3] The Court has not been provided with a copy of the "Retail Lessor Agreement" between KEB and MMCA.

permission[4] and got into a car accident with a vehicle driven by Andrew Andreou, D.M.D. (Pls. 56.1 Stmt. ¶ 9; Shim Aff. Ex. C, Police Report.) Neither party received a ticket at the scene, and both were able to drive their respective vehicles home. (Shim Aff. Ex. C, Police Report.)

On or around October 20, 2004, Dr. Andreou and his wife Margaret commenced an action in Nassau County Supreme Court against Calabrese and Facciponti seeking damages for personal injuries sustained by Dr. Andreou in the accident (the "Andreou Action"). (Pls. 56.1 Stmt. ¶ 12.) On or around January 28, 2005, the Andreous filed an amended complaint, adding MMCA as a defendant and seeking damages under a theory of vicarious liability. (Pls. 56.1 Stmt. ¶¶ 12-13; Shim Aff. Ex. D, Amended Verified Complaint.) There were no cross-claims between Calabrese, Facciponti, and MMCA.

The Andreous were represented by Brian Limmer, Esq; GEICO hired Russo to defend Calabrese, Facciponti, and MMCA; and MMCA's insurer, Tokio Marine, hired London Fischer, LLP to act as monitoring counsel. (Shim Aff. Ex. D; Russo 56.1 Stmt. ¶ 12; Defs. 56.1 Stmt. ¶ 5.) Tokio Marine also had one of its claims adjusters, Curtis Hamilton, monitoring the case.

---

[4] Calabrese and Facciponti are husband and wife. (Shim Aff. Ex. T, Facciponti Dep. 8.)

A.    Discovery[5]

Mr. Limmer filed a verified bill of particulars on behalf of Dr. Andreou on May 9, 2005, detailing the injuries resulting from the accident, which included cervical and lumbar sprains, cervical radiculopathy, epicondylitis, ulnar neuritis, and carpal tunnel syndrome. (Shim Aff. Ex. E, Bill of Particulars ¶ 6.) The bill of particulars stated that Dr. Andreou was not making a claim for lost earnings, but reserved his right to do so. (Shim Aff. Ex. E, Bill of Particulars ¶ 15.) Russo deposed Dr. Andreou shortly thereafter on May 11, 2005. (Shim Aff. Ex. S, First Andreou Dep.)

Mr. Limmer filed a verified supplemental bill of particulars on behalf of Dr. Andreou on June 9, 2005, adding a claim for lost earnings in the amount of $2,249,990. (Shim Aff. Ex. E, Supplemental Bill of Particulars.) Dr. Andreou claimed that his injuries inhibited his ability to practice dentistry. That same day, Mr. Limmer served an expert witness disclosure for Dr. Alan Leiken, an economist who computed Dr. Andreou's lost earnings figure. (Shim Aff. Ex. F, Leiken Expert Witness Disclosure.)[6] Russo deposed Dr. Andreou a second time on August

---

[5] The Court will only summarize the discovery that is relevant to the pending motions.

[6] Dr. Leiken actually prepared two reports. The first, which he prepared on or around June 9, 2005, estimated that Dr. Andreou's lost earnings would amount to $2,249,990 based in part on U.S.

3, 2005 regarding the information in the supplemental bill of particulars. (Shim Aff. Ex. S, Second Andreou Dep.) Russo, however, did not ask Dr. Andreou about his business's record-keeping practices during the deposition. (See generally Shim Aff. Ex. S, Second Andreou Dep.; see also Petropoulos Aff.[7] Ex. X, Trial Tr. 132-137.) At some point, however, Russo requested and received Dr. Andreou's personal and business tax returns.[8] (Petropoulos Aff. Ex. X, Trial Tr. 130.)

On September 1, 2005, the trial judge certified the case for trial and directed the Andreous to file a note of issue within ninety days. (Petropoulos Aff. Ex. N, Certification Order.)

On or around November 2, 2005, Russo filed a consent to change attorney, and Montfort Healy was substituted as counsel for Calabrese, Facciponti, and MMCA. (Petropoulos Aff. Ex. O, Notice of Consent to Change Attorney.) Montfort Healy

---

Bureau of Labor Statistics regarding the average annual income of dentists in the United States. The second, which he prepared on or around November 28, 2005, estimated that Dr. Andreou's lost earnings would amount to $4,442,531 based in part on statistics from the American Dental Association Survey Center regarding dentists' average annual income. (Shim Aff. Ex. F.)

[7] "Petropoloulos Aff." refers to the Affirmation at Docket Entry 140-1 and the exhibits at Docket Entries 140-143, 152-1.

[8] The Court notes that Dr. Andreou's tax returns reflect that he earned $36,425 the year before the accident, $36,425 the year of the accident, and $48,535 the year following the accident. (Petropoulos Aff. Ex. TT, Goldman Report 2.)

served a notice for discovery and inspection on November 18, 2005, seeking supplemental medical authorizations. (Petropoulos Aff. Ex. P, Notice for Discovery & Inspection.)[9]  Mr. Limmer rejected the demand as untimely, however, because the case was already certified for trial. (Petropoulos Aff. Ex. Q.)

Mr. Limmer served a verified amended bill of particulars on November 28, 2005, stating that Dr. Andreou had surgery scheduled for December 21, 2005 (Shim Aff. Ex. E, Amended Bill of Particulars), and filed the note of issue on November 29, 2005 (Petropoulos Aff. Ex. S, Note of Issue). On December 9, 2005, Montfort Healy filed a motion to vacate the note of issue on the grounds that there was still outstanding discovery--namely Montfort Healy's November 18 discovery demand. (Petropoulos Aff. Ex. T, Motion to Vacate.)  However, Montfort Healy withdrew the motion before the trial judge could rule on it. (Defendants Opp., Docket Entry 167, at 9.)

Mr. Limmer produced Dr. Andreou for a third deposition relating to the information in the amended bill of particulars on March 8, 2006. (Shim Aff. Ex. S, Third Andreou Dep.) Although the deposition was limited to questions regarding medical treatment Dr. Andreou received since his second deposition, Montfort Healy was nonetheless able to ask a few

---

[9] The request did not seek any business records. (Petropoulos Aff. Ex. P, Notice for Discovery & Inspection.)

questions about Dr. Andreou's recordkeeping practices. (Shim Aff. Ex. S, Third Andreou Dep. 21-25.) Dr. Andreou testified that he used a computer program called Dentrix in lieu of hardcopy files. The Dentrix software contained Dr. Andreou's schedule--_i.e._, his scheduled appointments and the procedures to be performed at those appointments--and his billing records. (Shim Aff. Ex. S, Third Andreou Dep. 21-22.) Montfort Healy demanded copies of any and all records contained within the Dentrix software (the "Dentrix Records") and served a motion to compel their production on or about May 5, 2006. (Petropoulos Aff. Ex. U, Motion to Compel.) That motion was ultimately denied. (Montfort Healy 56.1 Stmt. ¶ 17; Petropoulos Aff. Ex. X, Trial Tr. 128-45.)

On or around May 12, 2006, Montfort Healy served an expert witness disclosure for economist Fred Goldman, Ph.D.[10] (Reyes Aff. in Opp.[11] Ex. S, Goldman Expert Witness Disclosure.) The disclosure stated that Dr. Goldman was being called to testify as to Dr. Andreou's "economic losses" and that his expert opinion was based on "his review of materials produced throughout this litigation." (Reyes Aff. in Opp. Ex. S, Goldman

---

[10] Dr. Goldman has previously been retained by Mr. Larkin as a consulting expert to assist Mr. Larkin in analyzing Dr. Leiken's expert reports. (Petropoulos Aff. Ex. JJ, Larkin Dep. 197-98.)

[11] "Reyes Aff. in Opp." refers to the affidavit and exhibits at Docket Entry 166.

Expert Witness Disclosure ¶¶ 2-3.)  The disclosure included Dr. Goldman's curriculum vitae.  It did not, however, include a copy of Dr. Goldman's report or state what Dr. Goldman's opinion was because his report was not completed until June 6, 2006. (Petropoulos Aff. Ex. BB, Trial Tr. 641-46; Petropoulos Aff. Ex. TT, Goldman Report.)  The report criticized the assumptions and methodology used by Dr. Leiken in calculating Dr. Andreou's lost earnings; the report did not provide Dr. Goldman's own estimate of Dr. Andreou's lost earnings.  (Petropoulos Aff. Ex. TT, Goldman Report.)  Montfort Healy did not update its expert disclosure after receiving Dr. Goldman's report.  (Petropoulos Aff. Ex. BB, Trial Tr. 647.)

Tokio Marine's monitoring counsel, London Fischer, assigned a second-year associate, Jeremy Cantor, Esq., to monitor the discovery in the Andreou Action.[12]  On or around May 10, 2006, Mr. Cantor sent a letter to GEICO, stating that London Fischer was having "extreme difficulties in properly evaluating the case" because it had not received copies of any expert reports or Mr. Andreou's work records.  (Reyes Aff. in Opp. Ex. U.)  On or around June 9, 2006, Mr. Cantor sent Tokio Marine a Second Updated and Revised Case Investigation and Evaluation Report, which recommended settling the matter for no more than

---

[12] Mr. Cantor was being supervised by Clifford A. Aaron, Esq., a London Fischer partner.

$1.5 million (inclusive of the $100,000 that would be contributed by Calabrese's GEICO insurance policy, see supra page 4). (Petropoulos Aff. Ex. V, Case Investigation & Evaluation Report, at 14.) The report also reflected that the Andreous had made a demand of $4.5 million. (Petropoulos Aff. Ex. V, Case Investigation & Evaluation Report, at 14.)

B.    The Trial

The trial was bifurcated, with the liability phase beginning on June 21, 2006. (Pls. 56.1 Stmt. ¶ 16.) The jury returned with a verdict in favor of the Andreous on June 22, 2006, finding Facciponti 100% liable for the January 6, 2003 accident. (Shim Aff. Ex. H, Response to Request for Admission Nos. 2-4.) Mr. Cantor was the only representative of Tokio Marine present during the trial. He was responsible for monitoring its progress and reporting back to both Mr. Aaron at London Fischer and Mr. Hamilton at Tokio Marine.

The damages portion of the trial began on June 22, 2006 with Dr. Andreou's testimony. (See generally Petropoulos Aff. Ex. W.) On June 23, 2006, Mr. Limmer sought to introduce the Dentrix Records as an exhibit. Hugh Larkin, Esq., the Montfort Healy attorney who tried the case, sought to have them precluded on the grounds that they were not produced during the course of discovery, but Mr. Larkin's motion was denied. (Petropoulos Aff. Ex. X, Trial Tr. 129-30.) That same day, Mr.

Limmer made a settlement demand of $3,750,000, and Tokio Marine made a counteroffer of $600,000. (Montfort Healy 56.1 Stmt. ¶ 24.)

Dr. Leiken took the stand on June 27, 2006 and testified that Dr. Andreou was likely to sustain economic damages in the amount of $4,442,531 in lost earnings. (Petropoulos Aff. Ex. Z, Trial Tr. 351.) See also supra p. 6-7 and note 6. Tokio Marine then increased its settlement offer to $750,000. On June 29, 2006, Dr. Goldman was precluded from testifying because Montfort Healy's expert disclosure was found to be facially deficient--i.e., it did not contain Dr. Goldman's opinion. (Petropoulos Aff. Ex. BB, Trial Tr. 641-47.) Tokio Marine then increased its settlement offer to $1,000,000. (Reyes Aff. in Opp. Ex. E.) Mr. Cantor testified that Dr. Goldman's preclusion caused Tokio Marine to increase its settlement offer. (Reyes Aff.[13] Ex. H, Cantor Dep. 78-79.)

The jury began deliberating on July 6, 2006. (Petropoulos Aff. Ex. DD, Trial Tr. 902-03.) While the jury was deliberating, Mr. Limmer had Dr. Andreou turn down Tokio Marine's $1,000,000 offer under oath. (Petropoulos Aff. Ex. DD, Trial Tr. 904-05.) Later that afternoon, the jury requested a read-back of the jury instructions related to the threshold

---

[13] "Reyes Aff." refers to the affidavit and exhibits at Docket Entry 139.

issue of whether Dr. Andreou suffered a serious injury.[14] (Petropoulos Aff. Ex. DD, Trial Tr. 906-908.)  Mr. Cantor then increased Tokio Marine's settlement offer to $1.5 million (including GEICO's $100,000), which the Andreous accepted. (Reyes Aff. Ex. I, Hamilton Dep. 140; Shim Aff. Ex. J, Stipulation of Discontinuance.)

III. <u>The Federal Court Action</u>

Tokio Marine and MMCA commenced the present action on June 21, 2007 against Calabrese and Facciponti asserting claims for contractual and common law indemnification to recover the $1.4 million expended in settling the Andreou Action.  (Docket Entry 1.)  On May 1, 2008, Defendants filed and served a Third-Party Complaint, asserting claims for legal malpractice against Russo and Montfort Healy.  (Docket Entry 17.)  Both Russo and Montfort Healy filed cross-claims against the other for contribution.  (Docket Entries 18, 22.)

The parties engaged in protracted fact and expert witness discovery:  Defendants retained Stuart Gartner, Esq., Russo retained Frank Catelli, Esq., and Montfort Healy retained Frederick Johs, Esq. as legal experts.  The Third-Party Defendants also retained David Duffus, an economist, to review

---

[14] If the jury found that Dr. Andreou did not suffer a "serious injury," he could not recover any damages.

Dr. Leiken's and Dr. Goldman's reports.  Plaintiffs did not retain any experts.

On April 12, 2012, Plaintiffs moved for summary judgment on its claims against Defendants.  (Docket Entry 138.) On April 13, 2012, Defendants cross-moved for summary judgment on Plaintiffs' indemnification claims[15] (Docket Entry 139), and the Third-Party Defendants filed motions for summary judgment on Defendants' malpractice claims (Docket Entries 140, 145).  Russo also moved for summary judgment on Montfort Healy's cross claim for contribution.  (Docket Entry 145.)  These motions are presently pending before the Court.

DISCUSSION

The Court will first discuss the applicable standard of review before addressing the merits of the pending motions.

I.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "In assessing the record to determine whether

---

[15] Defendants did not cross-move for summary judgment on its malpractice claims.

there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." See Morales

15

v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)

(citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir.

2000)).  Thus, even if multiple parties move for summary

judgment and assert the absence of any genuine issues of

material fact, "a district court is not required to grant

judgment as a matter of law for one side or the other."

Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir.

1993) (citation omitted).  "Rather, each party's motion must be

examined on its own merits, and in each case all reasonable

inferences must be drawn against the party whose motion is under

consideration."  Morales, 249 F.3d at 121 (citation omitted).

It is under this framework that the Court analyzes the pending

motions.[16]

II.  Indemnification Claims

        Plaintiffs and Defendants have cross-moved for summary

judgment on the indemnification claims.  The Complaint asserts

two separate claims for indemnification:  one against Calabrese

for contractual indemnity and one against Facciponti for common

law indemnity.  Defendants, in addition to opposing these

claims, argue that, to the extent that they are liable to

Plaintiffs, they are entitled to indemnification and

---

[16] Because the parties have all cited to New York law in their
papers and no one disputes the applicability of New York law,
the Court will not engage in a choice-of-law analysis and will
apply New York law to the parties' claims.  See Lehman v. Dow
Jones & Co., 783 F.2d 285, 294 (2d Cir. 1986).

contribution from Montfort Healy and Russo.  The Court will
address each claim separately.

A.  <u>Contractual Indemnity</u>

Plaintiffs argue that they are entitled to summary
judgment on its claim against Calabrese because it is
undisputable that the Lease executed by Calabrese, which
contains the Indemnification Provision at issue, is valid and
enforceable.  Defendants, on the other hand, argue that they are
entitled to summary judgment on this claim because
(1) Plaintiffs lack standing to enforce the Indemnification
Provision; (2) the Indemnification Provision does not require
Calabrese to indemnify Plaintiffs for the negligence of
Defendants' lawyers; (3) the settlement was unreasonable as a
matter of law.

1.  <u>Standing</u>

Defendants argue that Plaintiffs do not have standing
to enforce the Indemnification Provision because Calabrese only
agreed to indemnify KEB--<u>i.e.,</u> the provision did not provide for
indemnification of KEB's assignees and thus did not require
Calabrese to indemnify MMCA.  Thus, the issue is whether KEB
properly assigned its right to indemnification to MMCA.  The
Court finds that it did.

"Under New York law, contracts are freely assignable
absent language which expressly prohibits assignment."  <u>In re</u>

Refco Inc. Sec. Litig., 826 F. Supp. 2d 478, 494 (S.D.N.Y. 2011) (internal quotation marks and citation omitted); accord In re Stralem, 303 A.D.2d 120, 122, 758 N.Y.S.2d 345, 347 (2d Dep't 2003). "No particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned." Leon v. Martinez, 84 N.Y.2d 83, 88, 614 N.Y.S.2d 972, 974, 638 N.E.2d 511, 513 (1994); see also Miller v. Wells Fargo Bank Int'l Corp., 540 F.2d 548, 557 (2d Cir. 1976) ("The New York cases make clear that an assignment need not utilize any particular phraseology or form; any act or words are sufficient which show an intention of transferring the chose in action to the assignee . . . ." (internal quotation marks and citation omitted)). However, "[i]n order for an assignment to be valid, the assignor must be divested of all control over the thing assigned." In re Stralem, 303 A.D.2d 120, 123, 758 N.Y.S.2d 345, 347 (2d Dep't 2003) (internal quotation marks and citation omitted); see also Miller, 540 F.2d at 557. Once a valid assignment is made, "an assignee steps into the assignor's shoes and acquires whatever rights the latter had." Furlong v. Shalala, 156 F.3d 384, 392 (2d Cir. 1998).

Here, there is no question that the Lease was assigned to MMCA, as it specifically states that KEB "assigns to MMCA all

right, title, and interest in and to the Vehicle and this Lease." (Shim Aff. Ex. A, Lease § 9.) The question is whether, and to what extent, the Indemnification Provision was assigned. Defendants concede that the right to seek indemnification was assigned but argue that such right was limited to indemnification for damages sustained by KEB. In other words, MMCA can only seek indemnification for damages suffered by KEB; and, as KEB was not a party to the Andreou Action, there are no damages to indemnify. This argument is without merit.[17]

Although an indemnification clause "must be strictly construed," the purpose of such strict construction is "to avoid reading into it a duty which the parties did not intend to be assumed." Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 367, 548 N.E.2d 903, 905 (1989). Calabrese, upon signing the Lease, was fully aware that she was responsible for any and all "damages, claims, injuries and expenses" arising out of the "use or operation of the Vehicle." (Shim Aff. Ex. A, Lease § 19.) And but for the assignment of the Lease, KEB--not MMCA--would have been named in

_____

[17] Montfort Healy, a non-party to the Complaint, asserts that the Indemnification Provision is unenforceable because it is ambiguous. However, Judge Raymond Dearie of the United States District Court for the Eastern District of New York, interpreting identical contract language, held that it was "not unclear or ambiguous." See Tokio Marine & Nichido Fire Ins. Co. v. Macready, 803 F. Supp. 2d 193, 201-02 (E.D.N.Y. 2011). And this Court agrees.

the Andreou Action and Calabrese would have been obligated to indemnify KEB. Thus, the Court finds that it is the right to seek indemnification for damages arising out of Calabrese's use of the Vehicle--not the right to seek indemnification for KEB's damages--that was assigned to MMCA. See, e.g., Samaroo v. Patmos Fifth Real Estate, Inc., No. 37170/06, 2011 WL 2636257, at *23-25 (Sup. Ct. Kings Cnty. June 30, 2011) (rejecting the exact argument propounded by Plaintiffs herein); see also Macready, 803 F. Supp. 2d 193 (allowing the assignee of an automobile lease agreement to enforce an identical indemnification provision against a lessee to recover damages that the assignee sustained in a personal injury trial arising out of the lessee's use of the automobile); Tokio Marine & Nichido Fire Ins. Co. v. Rosner, No. 02-CV-5065 (E.D.N.Y. Nov. 3, 2005) (same), aff'd, 206 F. App'x 90 (2d Cir. 2006). Accordingly, MMCA, and Tokio Marine as MMCA's subrogor, see Kaf-Kaf, Inc. v. Rodless Decorations, Inc., 90 N.Y.2d 654, 660, 665 N.Y.S.2d 47, 49, 687 N.E.2d 1330, 1332 (1990), have standing to bring this action.

2.  Indemnification for Third-Party Negligence

Defendants also argue that the Indemnification Provision does not apply here because the damages arose, in large part, out of the negligence of the Third-Party Defendants, and Plaintiffs are not entitled to indemnity for the negligence

of third parties.  The Court disagrees.  The New York Court of Appeals has held that, so long as "the intent is clear, an indemnification agreement will be enforced even if it provides indemnity for one's own or a third party's negligence." Bradley v. Earl B. Feiden, Inc., 8 N.Y.3d 265, 275, 832 N.Y.S.2d 470, 475, 864 N.E.2d 600, 605 (2007) (collecting cases).  This does not mean that the indemnification clause must contain express language referring to the negligence of third parties, "but merely that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances." Margolin v. N.Y. Life Ins. Co., 32 N.Y.2d 149, 153, 344 N.Y.S.2d 336, 339, 297 N.E.2d 80, 82 (1973).

The Indemnification Provision at issue provided for indemnification for "all losses, damages, claims, injuries and expenses" arising out of the Vehicle's operation and use.  (Shim Aff. Ex. A, Lease § 19 (emphasis added).)  Courts in New York have consistently held that similarly broad language in indemnification contracts encompasses the negligence of parties other than the indemnitor.  See, e.g., Cortes v. Town of Brookhaven, 78 A.D.3d 642, 910 N.Y.S.2d 171 (2d Dep't 2010) (finding that an agreement to indemnify another against "any and all claims" includes claims arising out of the other party's own negligence); see also Kurek v. Port Chester Hous. Auth., 18

N.Y.2d 450, 456-57, 276 N.Y.S.2d 612, 615, 223 N.E.2d 25, 28 (1966); Sherry v. Wal-Mart Stores E., L.P., 67 A.D.3d 992, 994-97, 889 N.Y.S.2d 251, 255-56 (2d Dep't 2009).

Accordingly, the Court finds that the Indemnification Provision covered the alleged malpractice of the Third-Party Defendants as such damages would not have been incurred but for Defendants' use and operation of the Vehicle. If the Third-Party Defendants were, in fact, negligent in their representation of Defendants in the Andreou Action, Defendants are entitled to seek contribution from them in the Third-Party Action.

### 3. Reasonableness

Finally, Defendants argue that they are entitled to summary judgment on Plaintiffs' contractual indemnity claim because the settlement payment for which they are seeking indemnification is unreasonable as a matter of law. Plaintiffs, on the other hand, argue that Defendants are estopped from challenging the reasonableness of the settlement because they had notice of the underlying claim. Although the Court agrees with Defendants' statement of the applicable law, the Court finds that neither party is entitled to summary judgment.

### a. Applicable Law

"[I]t is well-established under New York law that, where an indemnitor does not receive notice of an action settled

by an indemnitee, 'in order to recover reimbursement [for the settlement], [the indemnitee] must establish that [it] would have been liable and that there was no good defense to the liability.'" Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust, 74 A.D.3d 32, 39, 900 N.Y.S.2d 246, 253 (1st Dep't 2010) (alterations in original) (quoting Feuer v. Menkes Feuer, Inc., 8 A.D.2d 294, 299, 187 N.Y.S.2d 116, 122 (1st Dep't 1959)). If, on the other hand, an indemnitor has notice of the claim against it, "the general rule is that the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make." Fidelity Nat'l Ins. Co. of N.Y. v. First N.Y. Title & Abstract Ltd., 269 A.D.2d 560, 561, 707 N.Y.S.2d 112, 113 (2d Dep't 2000) (quoting Goldmark Indus., Ltd. v. Tessoriere, 256 A.D.2d 306, 307, 681 N.Y.S.2d 327, 328 (2d Dep't 1998)) (internal quotation marks omitted); see also Coleman v. J.R.'s Tavern, Inc., 212 A.D.2d 568, 568, 622 N.Y.S.2d 334, 336 (2d Dep't 1995).

Plaintiffs' argument that because Defendants were on notice of the claim, they are now estopped from challenging the reasonableness of the settlement, is entirely without merit. Not only could the Court not find a single case in support of this argument, but each and every case cited by Plaintiffs (Pls. Opp., Docket Entry 153, at 3) clearly applies the law as articulated above--i.e., that an indemnitee will only be bound

by a reasonable settlement entered in good faith.[18]  Plaintiffs'

own brief even asserts that, to recover, the settlement must be

"reasonable" and in "good faith."  (Pl. Opp., Docket Entry 153,

at 3.)  As such, the Court rejects this argument as frivolous.

> b.  Analysis

Defendants do not dispute that Calabrese was on notice

of the Andreou Action;[19] therefore, the issue is whether the

settlement was reasonable and made in good faith.

---

[18] See Coleman, 212 A.D.2d at 568, 622 N.Y.S.2d at 335 ("When an indemnitor has notice of the claim against it, the general rule is that the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make."); Waltz v. MRC Mgmt., L.L.C., 378 F. Supp. 2d 440, 442 (S.D.N.Y. 2005) (quoting identical language); Fidelity, 269 A.D.2d at 561, 707 N.Y.S.2d at 113 (same); Deutsche Bank, 74 A.D.3d at 39, 900 N.Y.S.2d at 253 (similar); Conopco, Inc. v. Imperial Chem. Indus. PLC, No. 97-CV-5529, 1999 WL 1021077, at *5 (S.D.N.Y. Nov. 8, 1999) (similar); Tokio Marine & Fire Ins. Co. v. Rosner, 206 F. App'x 90, 95 (2d Cir. 2006) ("To procure indemnification for an underlying claim that was voluntarily settled, the indemnitee must demonstrate, inter alia, that the settlement amount was reasonable."); Tokio Marine & Fire Ins. Co. v. Pagan, No. 02-CV-4211, 2003 WL 1858147, at *2 (S.D.N.Y. Apr. 9, 2003) (granting summary judgment in favor of indemnitee where indemnitor "failed to adduce any competent evidence" in support of its allegations that the settlement payment was unreasonable and not made in good faith).

[19] Nor could they as "the relevant inquiry in determining whether an indemnitor had sufficient notice of a settlement is not whether the indemnitor had specific notice of the indemnitee's settlement negotiations, but whether the indemnitor had notice of the underlying claim such that it had an ample opportunity to defend its interests." Macready, 803 F. Supp. 2d at 202; see also Deutsche Bank, 74 A.D.3d at 42-44, 900 N.Y.S.2d at 255-56.

i.   <u>Defendants' Motion</u>

Viewing all facts in the light most favorable to Plaintiffs, Defendants' motion for summary judgment on this claim must be denied. "In the context of indemnification, courts routinely find settlements to be 'reasonable' when the recovery at trial could have been greater." <u>Macready</u>, 803 F. Supp. 2d at 203 (quoting <u>Koch Indus., Inc. v. Aktiengesellschaft</u>, 727 F. Supp. 2d 199, 225 (S.D.N.Y. 2010)) (internal quotation marks omitted). Here, evidence was presented in the Andreou Action that Dr. Andreou sustained economic loss and injuries in excess of four million dollars. (Petropoulos Aff. Ex. Z, Trial Tr. 351-54.) And no evidence was presented to refute that figure.

Defendants argue that Plaintiffs are precluded from relying upon Dr. Leiken's testimony in the Andreou Action regarding Dr. Andreou's injuries because Dr. Leiken was not disclosed in a Rule 26 expert disclosure in the instant action. This argument is entirely without merit. Dr. Leiken testified as an expert in the Andreou Action because he was giving his opinion regarding Dr. Andreou's lost earnings. In contrast, in the present case, he is not offering this opinion, as the actual amount of lost earnings is not at issue. The issue here is whether the recovery at trial could have been greater than the settlement figure, and Dr. Leiken's testimony is being used to

establish the _fact_ that damages in excess of four million dollars were presented to the jury. As such, for the purposes of this action, Dr. Leiken is a fact witness and no Rule 26(a)(2) disclosure was necessary.

Further, Defendants argue that they are entitled to summary judgment because Plaintiffs have failed to come forward with any expert evidence in support of their claims. This argument, however, is also without merit, as courts in this Circuit have routinely granted summary judgment in favor of an indemnitee seeking reimbursement for monies paid pursuant to a settlement agreement without expert testimony on whether the settlement was reasonable. _See, e.g._, _Macready_, 803 F. Supp. 2d at 203; _Koch_, 727 F. Supp. 2d at 225.

Accordingly, as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," _Anderson_, 477 U.S. at 248, Defendants' motion for summary judgment on the contractual indemnity claim is DENIED.

### ii. Plaintiffs' Motion

Plaintiffs' motion for summary judgment on this claim must also be denied. In all of the cases cited by Plaintiffs in support of their motion, summary judgment was granted in favor of the indemnitee because no evidence was presented that the settlement at issue was unreasonable. _See, e.g._, _Macready_, 803 F. Supp. 2d at 203 ("Other than simply reasserting that their

daughter was not negligent in causing the accident, the [indemnitor] ha[s] not come forward with any evidence to suggest that the settlement was unreasonable."); Pagan, 2003 WL 1858147, at *2 ("[W]hile [the indemnitor] allege[s] that [the indemnitee] settled hastily, without sufficient investigation of the damages and the various defenses available to the [indemnitor] against [the plaintiff in the underlying action], . . . [the indemnitor] ha[s] failed to adduce any competent evidence of record that materially supports any of these speculations. Therefore, as [the indemnitor] w[as] on notice of [the underlying claim], [he] is bound by the[] indemnitee's settlement."). That is not the case here, as Defendants have submitted evidence that: (i) Mr. Cantor had less than two years of experience and no trial experience[20] (see Reyes Aff. Ex. H, Cantor Dep. 7, 13); (ii) according to Montfort Healy's expert, Mr. Johs, the jury's questions were "positive for the defense" (Petropoloulos Aff. Ex. QQ, Johs Dep. 183-185), yet Mr. Cantor did not advise Mr. Hamilton that these questions were asked (see Reyes Aff. Ex. I, Hamilton Dep. 95), and instead increased the settlement offer by

---

[20] This is relevant because "a strong presumption exists that a settlement is fair and reasonable" where, among other things, "the proponents have counsel experienced in similar cases." Ford Motor Credit Co. v. Meehan, No. 05-CV-4807, 2008 WL 2746373, at *6 (E.D.N.Y. July 11, 2008) (internal quotation marks and citation omitted); accord Thomas v. City of N.Y., 92-CV-1316, 1995 WL 51991, at *2 (E.D.N.Y. Aug. 4, 1995).

$500,000; and (iii) Mr. Limmer had Dr. Andreou take the witness stand to reject the prior offer of $1,000,000 (Petropoulous Aff. Ex. DD, Trial Tr. 904-05), which Mr. Johs testified was an indication that Mr. Limmer disagreed with Dr. Andreou's decision to reject the offer (Petropoloulos Aff. Ex. QQ, Johs Dep. 188). The Court finds that, viewing this evidence in the light most favorable to Defendants, a reasonable jury could return a verdict for Defendants--_i.e.,_ that there is some evidence in support of Defendants' assertion that the settlement was unreasonable. Therefore, there is a material issue of fact as to whether the settlement was reasonable, and Plaintiffs' motion for summary judgment on the contractual indemnity claim is also DENIED.

B. <u>Common Law Indemnity</u>

Plaintiffs also assert a common law indemnification claim against Facciponti. In New York, "[a] party is entitled to [common-law] indemnification when it is held liable for a tort committed by a third party despite the fact that it has done no wrong." <u>Tokio Marine & Fire Ins. Co. v. Grodin</u>, No. 05-CV-9153, 2006 WL 3054321, at *3 (E.D.N.Y. 2006); <u>see also</u> <u>McCarthy v. Turner Constr., Inc.</u>, 17 N.Y.3d 369, 377-78, 929 N.Y.S.2d 556, 563, 953 N.E.2d 794, 801 (2011) ("[A] party cannot obtain common law indemnification unless it has been held to be vicariously liable without proof of any negligence or actual

supervision on its own part."). Defendants argue that they are entitled to summary judgment on Plaintiffs' common law indemnification claim against Facciponti because Plaintiffs are not free from fault--i.e., they "hired an inexperienced attorney to negotiate a high exposure case." (Defs. Opp. to Pls. Mot. 25.) The Court disagrees. Plaintiffs hired London Fischer, not specifically Mr. Cantor, to represent them in the Andreou Action, and any allegation that Plaintiffs were negligent for so doing is speculative at best. Further, that London Fischer may have been negligent in assigning a junior associate to monitor the Andreou Action does not affect Plaintiffs' entitlement to indemnification from Defendants, and Defendants' proper course is to seek contribution from London Fischer for damages caused by its alleged negligence in a separate proceeding.

Thus, having established that Plaintiffs are entitled to indemnification, the issue becomes whether Plaintiffs can recover the settlement amount from Facciponti. "The rule in the State of New York[] is that a person entitled to [common-law] indemnity . . . may settle the claims and recover over against the indemnitor, subject to the proof (1) of liability and (2) as to the reasonableness of the amount of settlement." McGurran v. DiCanio Planned Dev. Corp., 251 A.D.2d 467, 468, 674 N.Y.S.2d 706, 707 (2d Dep't 1998) (internal quotation marks and citation omitted); accord Grodin, 2006 WL 3054321, at *3. Thus, to

recover from Facciponti, Plaintiffs must prove that MMCA was liable to Dr. Andreou and that the settlement amount was reasonable. The parties do not dispute that MMCA, as the title owner and lessor of the Vehicle, was liable to Dr. Andreou (see Defs. Opp., Docket Entry 175, at 20 n.12; Pls. Mot. 17), and, for the reasons articulated above, there is a genuine issue of fact as to whether the settlement was reasonable. Accordingly, both Plaintiffs' and Defendants' motions for summary judgment on the common law indemnification claim are DENIED.

C. Contribution and/or Indemnification from Third-Party Defendants

Although Defendants are not moving for summary judgment on their legal malpractice claims against the Third-Party Defendants (Defs. Reply 1), they nonetheless request an "Order indemnifying the defendants for any portions of the settlement that are attributed tothe [sic] actions or, more precisely, the inactions of the third-party defendants in defending the Andreou litigation" (Defs. Mot. 23). This is improper for two reasons. First, as stated above, a party is only entitled to common law indemnification if he or she is free from fault. See supra p. 29. Here, Facciponti was found to be 100% liable for the accident giving rise to the Andreou Action (see Shim Aff. Ex. H, Response to Request for Admission No. 4.); thus, any claim that Defendants' own negligence did not

contribute to the damages is disingenuous and meritless. Second, "[a]lthough a main defendant may assert his claim for contribution [against a third-party defendant] prior to the payment of any amount to the plaintiff, this [c]laim does not entitle a main defendant to contribution until [p]ayment by such defendant to plaintiff of an amount in excess of his proportionate share of the judgment . . . ." Klinger v. Dudley, 41 N.Y.2d 362, 369, 393 N.Y.S.2d 323, 328, 361 N.E.2d 974, 979 (1977) (citation omitted). As Defendants have yet to pay anything to Plaintiffs, let alone an amount determined to be in excess of their proportionate share, Defendants' request must be DENIED.

III. Claims against and between the Third-Party Defendants

Both Montfort Healy and Russo have moved for summary judgment on Defendants' legal malpractice claims. In addition, Russo has moved for summary judgment on Montfort Healy's cross claim for indemnification or contribution.

A. Legal Malpractice Claims

"In order to prevail on a claim of legal malpractice under New York law, a client must demonstrate that the attorney was negligent, that the negligence was a proximate cause of the injury and that the client suffered actual and ascertainable damages." Rubens v. Mason (Rubens I), 387 F.3d 183, 189 (2d Cir. 2004) (citing McCoy v. Feinman, 99 N.Y.2d 295, 301-02, 755

N.Y.S.2d 693, 697, 785 N.E.2d 714 (2002)); see also Dombrowski
v. Bulson, 19 N.Y.3d 347, 350, 948 N.Y.S.2d 208, 209-10, 971
N.E.2d 338, 339-40 (2012) (To recover damages in a legal
malpractice action, "a plaintiff must establish 'that the
attorney failed to exercise the ordinary reasonable skill and
knowledge commonly possessed by a member of the legal profession
and that the attorney's breach of this duty proximately caused
plaintiff to sustain actual and ascertainable damages.'"
(quoting Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 8
N.Y.3d 438, 442, 835 N.Y.S.2d 534, 536, 867 N.E.2d 385, 387
(2007))). "Each element must be established for a claim to
succeed. Thus, '[i]n order for a defendant to succeed on
summary judgment, it must establish that the plaintiff is unable
to prove at least one of the essential elements.'" Joseph
DelGreco & Co. v. DLA Piper, L.L.P., --- F. Supp. 2d ----, 2012
WL 4510691, at *5 (S.D.N.Y. Oct. 1, 2012) (quoting Rubens v.
Mason (Rubens II), 527 F.3d 252, 255 (2d Cir. 2008)).

     1.  Negligence

     To establish that the Third-Party Defendants breached
their duty, Defendants must show that their conduct "'fell below
the ordinary and reasonable skill and knowledge commonly
possessed by a member of his profession.'" Achtman v. Kirby,
McInerney & Squire, L.L.P., 464 F.3d 328, 337 (2d Cir. 2006)
(quoting Grago v. Robertson, 49 A.D.2d 645, 646, 370 N.Y.S.2d

255, 258 (3d Dep't 1975)).  "Generally, an attorney may only be liable for 'ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action.'"  Id. (quoting Bernstein v. Oppenheim & Co., 160 A.D.2d 428, 430, 554 N.Y.S.2d 487, 489-90 (1st Dep't 1990)).  An "error of judgment" or a "selection of one among several reasonable courses of action" does not rise to the level of legal malpractice.  Id.; accord Rosner v. Paley, 65 N.Y.2d 736, 738, 492 N.Y.S.2d 13, 14, 481 N.E.2d 553, 554 (1985); Joseph DelGreco & Co, 2012 WL 4510691, at *6.

Defendants argue that the Third-Party Defendants were negligent in:  (1) failing to negotiate a waiver of Plaintiffs' rights under the Indemnification Provision; (2) failing to obtain the Dentrix Records prior to trial; and (3) failing to timely exchange a proper witness disclosure, which resulted in the preclusion of Dr. Goldman as a testifying expert.  As the Third-Party Defendants concede that their failure to negotiate a release from the Indemnification Provision was negligent,[21] the Court will limit its discussion to the claims arising out of the Dentrix Records and Dr. Goldman's preclusion.

---

[21] Neither Montfort Healy nor Russo mention the reasonableness of their failure to negotiate a waiver in any of their briefs. Instead, both argue that the malpractice claim arising out of the Indemnification Provision must be dismissed because Plaintiff has failed to come forward with any evidence of causation.  (Russo Mot. 8; Montfort Healy Reply 2.)  The Court will address the element of causation separately.

a.   Dentrix Records

The Court finds that there are questions of fact as to whether both Russo and Montfort Healy were negligent in failing to obtain the Dentrix Records.

i.   Russo

Russo became aware that Dr. Andreou was asserting a lost earnings claim on or around June 9, 2005, when the supplemental bill of particulars was served.  Notwithstanding this knowledge, Russo failed to inquire of Dr. Andreou during his second deposition about his recordkeeping practices and general billing records--i.e., how many patients he saw, what types of procedures he performed, what he received from insurance companies versus patients for those procedures, payables and receivables--or serve a document demand specifically requesting this information.  (Petropoulos Aff. Ex. X, Trial Tr. 130-31.)  Instead, Russo requested the production of the tax records for both Dr. Andreou and his dental practice.

Defendants' expert, Mr. Gartner, testified that Dr. Andreou's business records were crucial because they would reveal the "heart" and "guts" of Dr. Andreou's practice:  "[I]s he doing extractions, is he doing root canal work, is he doing periodontal work.  Because those are the profit centers, as opposed to filling teeth."  (Petropoulos Aff. Ex. RR, Gartner Dep. 223-24.)  The Dentrix Records would have also revealed what

percentage of Dr. Andreou's practice was insurance-based, which Mr. Gartner testified is indicative of profitability. (Petropoulos Aff. Ex. SS, Gartner Dep. 263-64 (testifying that dentists who accept insurance typically receive only a fraction of their total bill).)  As this information was never requested or obtained by Russo, the Andreou Action was "almost impossible to defend."  (Petropoulos Aff. Ex. SS, Gartner Dep. 324; see also id. at Ex. X, Trial Tr. 129-30 (Mr. Larkin, in attempting to preclude the admission of the Dentrix Records at trial, argued that Dr. Andreou's failure to turn them over prior to trial "harmed us in the fact that we could not get an adequate grip on the type of practice the plaintiff had"); Reyes Aff. in Opp. Ex. U.)  According to Mr. Gartner, such information could not be gleaned from Dr. Andreou's tax returns.  (Petropoulos Aff. Ex. RR, Gartner Dep. 223.)

In contrast, Russo's expert, Mr. Catelli, stated in his report that Dr. Andreou's tax records were sufficient because "[t]he IRS records are typically the records that attorneys rely on when defending economic damages of self-employed individuals."  (Petropoulos Aff. Ex. OO, Catelli Report 3.)[22]

_____

[22] Mr. Catelli also stated that Russo was not negligent in failing to request the Dentrix Records because "[t]here is nothing to indicate that . . . they should have been aware of the need to inquire about any such records" (Petropoulous Aff.

35

Thus, there are two competing expert opinions as to the necessity of the Dentrix Records and the reasonableness of Russo's failure to obtain them prior to trial. As such, there is a material question of fact requiring trial. See D'Jamoos v. Griffith, 340 F. App'x 737, 739 (2d Cir. 2009) (recognizing that summary judgment may be inappropriate where competing expert affidavits were submitted as to whether an attorney's alleged failures were negligent or reasonable tactical decisions).

### ii. Montfort Healy

Montfort Healy replaced Russo on or around November 8, 2005 (Petropoulos Aff. Ex. O), and, although Montfort Healy immediately served Dr. Andreou with a notice for discovery and inspection, such request did not seek any business or billing records (Petropoulos Aff. Ex. P (Demand for Notice of Discovery and Inspection, dated November 18, 2005)). Thus, the same question of fact exists with respect to whether counsel's failure to recognize the importance of Dr. Andreou's business records and demand production of such documents fell below an objective standard of reasonableness. (Compare Petropoulos Aff.

---

Ex. OO, Catelli Report 3)--i.e., that they were unaware of the existence of the Dentrix software and Dr. Andreou's use of that software to maintain his business records. Such argument, however, misconstrues Defendants' claim. Defendants are arguing that Russo was negligent in, inter alia, failing to inquire as to the existence of any business records to refute Dr. Andreou's lost earnings figures--not specifically the Dentrix Records.

Ex. RR, Gartner Dep. 223-24, with Petropoulous Aff. Ex. OO, Catelli Report 3.)

Montfort Healy argues that their conduct was not negligent because the firm "promptly served a demand for the Dentrix [R]ecords" and moved to compel their production after Dr. Andreou mentioned them for the first time at his third deposition in March 2006. (Montfort Healy Mot. 17.) However, this demand was made almost four months after Montfort Healy replaced Russo and served its first document request, and more than three months after the note of issue was filed. Mr. Gartner testified that, notwithstanding the fact that Montfort Healy may not have been aware of the Dentrix software, the firm should have demanded the production of any "documentation as to any lost income or earnings," specifically, "any software which the plaintiff used in conjunction with his practice as to billing insurance[,] procedures, protocol and profitability" immediately upon receipt of the file from Russo (Petropoulos Aff. Ex. RR, Gartner Dep. 178)--in other words, before any depositions were taken (Petropoulos Aff. Ex. SS, Gartner Dep. 262). Otherwise, there would be "nothing the defendants could really probe" at Dr. Andreou's third deposition regarding his lost earnings claim. (Petropoulos Aff. Ex. RR, Gartner Dep. 178.) This issue of fact--whether Montfort Healy should have served a document demand for Dr. Andreou's business records

<u>before</u> his third deposition--is a question of fact precluding summary judgment.

        b.    <u>Goldman's Preclusion</u>

The Court finds that there is also a question of fact as to whether the Third-Party Defendants' failure to have an economist testify at trial constituted negligence. Russo appears to concede its own negligence with respect to Dr. Goldman's preclusion (<u>see</u> Russo Mot. 14-17 (arguing that it is entitled to summary judgment on this claim because Defendants have failed to establish proximate cause)); therefore, the Court will limit its discussion to Montfort Healy's alleged negligence. Montfort Healy argues that it was not negligent because "it is reasonable to use the economist merely as a consultant for the cross-examination of plaintiff's witness." (Montfort Healy Mot. 18.) There are two issues with this argument.

<u>First</u>, Defendants' expert, Mr. Gartner, opined that it was <u>unreasonable</u> not to offer any expert testimony to refute the economic damages put forth by Dr. Leiken. (<u>See</u> Petropoulos Aff. Ex. LL, Gartner Report 10 ("An expert was needed to discuss and calculate the value of those earnings over time, and dispute the contentions of Andreou's Economic expert.").) Although Montfort Healy's expert, Mr. Johs, asserted that it is relatively uncommon to call an expert economist as a defense witness

because "[a]n economist, by the nature of the specialty, will effectively concede a level of economic damages" (Petropoulos Aff. Ex. KK, Johs Report 5 ("[T]he standard of litigation practice in New York does not require the calling of a defense economist where a certain level of economic damages must be conceded.")), these competing expert opinions present a question of fact that cannot be resolved on summary judgment. See Rubens I, 387 F.3d at 190 (finding that, when presented with two competing expert affidavits, the "[d]etermin[ation of] whether [a lawyer]'s alleged failures were negligent or merely reasonable tactical decisions presented a question of fact that could not be resolved on summary judgment"); see also D'Jamoos, 340 F. App'x at 739.

Second, although Montfort Healy hired Dr. Goldman primarily to act as a consultant, the firm ultimately decided to offer him as a testifying witness. (See Petropoulos Aff. Ex. JJ, Larkin Dep. 197-98; Reyes Aff. in Opp. Ex. S.) Dr. Goldman was precluded from testifying at trial, however, because Montfort Healy's expert disclosure failed to comply with N.Y. C.P.L.R. 3101, which requires that an expert disclosure contain, inter alia, "the substance of the facts and opinions on which each expert is expected to testify." Dr. Goldman's expert disclosure in the Andreou Action did not include his opinion (see Petropoulos Aff. Ex. BB, Trial Tr. 646 (Mr. Larkin stating

that the omission was intentional as he "didn't have an opinion at that time")), thus the trial judge granted Mr. Limmer's motion <u>in limine</u> to preclude his testimony (Petropoulos Aff. Ex. BB, Trial Tr. 646 ("I'm not going to have somebody testify that having reviewed what another economist used in support of his conclusions that no economist could come to that conclusion . . . [w]here that isn't disclosed.")). Defendants argue that Montfort Healy's reliance on a deficient expert disclosure was negligent because it evinced a total disregard of the C.P.L.R. Montfort Healy does not address this argument in its papers, and the Court fails to see how Montfort Healy's decision to rely on an obviously incomplete and improper expert disclosure was a "selection of one among several reasonable courses of action." <u>Rosner</u>, 65 N.Y.2d at 738, 492 N.Y.S.2d at 14, 481 N.E.2d at 554. Thus, the Court finds that Defendants have raised a question of fact as to whether Montfort Healy exercised reasonable judgment in serving a facially deficient expert disclosure. <u>See</u> <u>Bernstein</u>, 160 A.D.2d at 430, 554 N.Y.S.2d at 489-90 (stating that "an attorney may be held liable for ignorance of the rules of practice").

      2.  <u>Proximate Cause and Damages</u>

"To find proximate cause and actual damages, the plaintiff must meet a 'case within a case' requirement, that is, the Court must find that but for the attorney's negligence, what

would have been a favorable outcome was an unfavorable outcome."
Wolfson v. Bruno, 844 F. Supp. 2d 348, 356 (S.D.N.Y. 2011)
(internal quotation marks and citations omitted); see also Zarin
v. Reid & Priest, 184 A.D.2d 385, 387, 585 N.Y.S.2d 379, 381
(1st Dep't 1992) ("The rule in a legal malpractice action is
that a plaintiff must demonstrate not only that actual damages
have been sustained, but also that counsel's negligence was the
proximate cause of the loss." (internal quotation marks and
citation omitted)); Rubens I, 527 F.3d at 255.  "The test is
whether a proper defense would have altered the result of a
prior action."  Carmel v. Lunney, 70 N.Y.2d 169, 173, 518
N.Y.S.2d 605, 607, 511 N.E.2d 1126, 1128 (1987) (internal
quotation marks and citation omitted).  Where the prior action
resulted in settlement, the plaintiff must establish that "the
settlement was effectively compelled by the mistakes of
counsel."  Kutner v. Catterson, 56 A.D.3d 437, 437-38, 867
N.Y.S.2d 156, 158 (2d Dep't 2008); accord Tortura v. Sullivan
Papain Block McGrath & Cannavo, P.C., 21 A.D.3d 1082, 1083, 803
N.Y.S.2d 571, 572 (2d Dep't 2005).  "The failure to establish
proximate cause requires dismissal of the legal malpractice
action, regardless of whether it is demonstrated that the
attorney was negligent."  Schwartz v. Olshan Grundman Frome &
Rosenzweig, 302 A.D.2d 193, 198, 753 N.Y.S.2d 482, 486 (1st
Dep't 2003).

The Court will address each of Defendants' malpractice claims separately.

a.  <u>Release from Indemnification Provision</u>

Defendants argue that the Third-Party Defendants committed legal malpractice in settling the Andreou Action without obtaining a release for Defendants from the Indemnification Provision.  The Third-Party Defendants argue that they are entitled to summary judgment on this claim because Defendants are unable to establish proximate cause.  The Court agrees.

The Court finds the Second Circuit's decision in <u>Allianz Insurance Co. v. Lerner</u>, 416 F.3d 109 (2d Cir. 2005), to be particularly instructive.  The facts in <u>Allianz</u> are nearly identical to the facts in the present case:  An insurer, as subrogee to an automobile lessor, commenced an indemnification action against the lessee to recover money spent settling a personal injury action arising out of a car accident involving the lessee.  <u>Id.</u> at 111-12.  The lessee then asserted third-party claims against the attorneys who had represented her in the personal injury suit for malpractice, alleging, <u>inter alia</u>, that the attorneys were negligent in settling the personal injury action without obtaining a release from the lessor and the subrogee of their indemnification claims against the lessee. <u>Id.</u> at 112-13.  The attorneys moved for summary judgment arguing

that the lessee could not establish proximate cause because the lessor's attorney testified that "[a]t no time did we nor would we ever have agreed to drop the cross claims." Id. at 112-13, 119 (alteration in original) (internal quotation marks omitted). The Second Circuit upheld the district court's decision to grant summary judgment in favor of the attorneys, concluding that "the affidavit of [the lessor]'s attorney . . . conclusively proves that even if the [a]ttorneys had acted non-negligently (i.e., sought a release from [the lessor]), [the lessor] would not have granted a release." Id. at 119. "Thus, no act or omission by the [a]ttorneys subjected [the lessee] to liability in favor of [the lessor]." Id.

In the present case, Mr. Hamilton testified that Tokio Marine will "not waive indemnification on any claims as a condition to settlement . . . under any circumstances" (Reyes Aff. Ex. I, Hamilton Dep. 63-64.) Defendants have come forward with no evidence to the contrary. Therefore, for the reasons articulated in Allianz, the Court GRANTS summary judgment in favor of the Third-Party Defendants on this claim.

b. Dentrix Records

The Court also finds that Defendants have failed to raise a triable issue of fact as to whether the Third-Party Defendants' failure to obtain the Dentrix Records prior to trial proximately caused any damages. Defendants argue that they are

able to establish proximate cause because there is evidence in the record that the Third-Party Defendants' failure to obtain the Dentrix Records "effectively compelled Tokio Marine to settle this matter at an excessive amount." (Defendants' Opp., Docket Entry 167, at 23.)   In support, Defendants point to Mr. Cantor's deposition testimony where he stated that the lack of the Dentrix Records "hurt tremendously" his ability to negotiate a settlement and affected his evaluation of what would constitute a reasonable settlement value.  (Reyes Aff. Ex. H, Cantor Dep. 90-91, 231; see also Reyes Aff. in Opp. Ex. U (letter from Mr. Cantor to GEICO claims examiner stating that the failure to obtain Dr. Andreou's work records made it "extreme[ly] difficult[]" to properly evaluate the case and come up with a settlement offer).)   The Court disagrees.  Defendants have not subpoenaed the Dentrix Records in the present case.  So while the Third-Party Defendants' failure to obtain the Dentrix Records pre-trial may have caused Tokio Marine to increase its settlement offer, it is complete speculation what, if any, effect the those records would have had on the settlement negotiations.   In other words, it is possible that the Dentrix Records would have been beneficial to Dr. Andreou's claims, thereby causing Tokio Marine to increase its settlement offer above $1.4 million.  Or the records could have revealed flaws in Dr. Leiken's calculations thereby benefiting Defendants.  Either

way, the Court would be speculating, as no one has seen or analyzed the records at issue. Accordingly, Defendants have failed to raise a triable issue of fact as to causation, see, e.g., Brown v. Samalin & Bock, P.C., 168 A.D.2d 531, 531-32, 563 N.Y.S.2d 426, 426-27 (2d Dep't 1990) (granting summary judgment in favor of attorney on malpractice claim because the damages claimed by the plaintiff were "too speculative and incapable of being proven with any reasonable certainty"), and the Third-Party Defendants' motions for summary judgment on this claim are GRANTED.

### c. Goldman's Preclusion

With respect to the malpractice claims arising out of Dr. Goldman's preclusion, the Court finds that Defendants have raised a triable issue of fact as to whether Montfort Healy proximately caused any damages, but not as to whether Russo proximately caused any damages.

### 1. Russo

Courts in New York regularly hold that a lawyer's negligent actions cannot be the proximate cause of a plaintiff's alleged damages if subsequent counsel had "a sufficient opportunity to protect the plaintiffs' rights by pursuing any remedies it deemed appropriate on their behalf." Katz v. Herzfeld & Rubin, P.C., 48 A.D.3d 640, 641, 853 N.Y.S.2d 104, 106 (2d Dep't 2008); see also Minkow v. Sanders, 82 A.D.3d 597,

598, 920 N.Y.S.2d 34, 35 (1st Dep't 2011) ("Defendants' alleged failures to obtain and provide discovery . . . could have been remedied by successor counsel."); Somma v. Dansker & Aspromonte Assocs., 44 A.D.3d 376, 377, 843 N.Y.S.2d 577, 578 (1st Dep't 2007) (dismissing the plaintiff's legal malpractice claim because "successor counsel had sufficient time and opportunity to adequately protect plaintiff's rights").

In the present case, there is evidence in the record that Montfort Healy replaced Russo with sufficient time to serve a proper expert witness disclosure. (See Petropoulos Aff. Ex. BB, Trial Tr. 647 (trial judge stating that he has "had people disclose [expert] opinions three hours before trial and [he has] dealt with it"); id. Ex. RR, Gartner Dep. 81 (testifying that a party may be permitted to serve an expert disclosure as little as two days before trial); id. Ex. NN, Catelli Report 7 (stating that "[i]t is the practice in the Supreme Court of Nassau County that Expert Disclosure [sic] can be served 30 days prior to trial" and that "most Judges in the Supreme Court of Nassau County will allow Expert Disclosure immediately prior to trial").) Accordingly, Defendants have failed to establish that Russo's failure to retain an expert proximately caused any damages, and thus Russo's motion for summary judgment on this claim is GRANTED.

## 2.  Montfort Healy

The Court does find, however, that Defendants have raised a triable issue of fact as to whether Montfort Healy's negligence, which led to the preclusion of Dr. Goldman, proximately caused Defendants' damages.  There is evidence in the record that the preclusion of Dr. Goldman's testimony caused Tokio Marine to increase its settlement offer.  (See Reyes Aff. Ex. I, Hamilton Dep. 41-42 (testifying that Dr. Goldman's preclusion "made it so that we had [to] increase our offers in this case"); id. at 91 (testifying that had "[t]he economist be[en] allowed to testify, . . . it is possible that we could have settled this claim for less than $1.4 million"); Reyes Aff. Ex. H, Cantor Dep. 78-79 (testifying that Dr. Goldman's preclusion "led us to increase our settlement offer"); id. at 78-79 ("There was nobody to rebut Dr. Lakin's [sic] economic findings, which were in the multi-million dollar range.  If we had an expert who could testify and explain to the jury why a decision that came in significantly less than that was perfectly reasonable, that would certainly assist us not only in our settlement negotiations but before the jury."); Reyes Aff. in Opp. Ex. Q (letter from Mr. Cantor to GEICO stating that the

negative impact of Dr. Goldman's preclusion on the outcome of the case was "astromical").)[23]

Montfort Healy argues that Defendants cannot establish proximate cause because, had Dr. Goldman testified, he would have conceded that Dr. Andreou suffered over one million dollars in economic damages. (Montfort Healy Mot. 15.) Montfort Healy bases this conclusion on: (1) testimony of Mr. Hamilton and Mr. Curtis (see Reyes Aff. Ex. H, Curtis Dep. 109 (testifying that Dr. Goldman would have testified to at least one million dollars in lost earnings); Reyes Aff. Ex. I, Hamilton Dep. 85 (stating that Mr. Curtis told him that Dr. Goldman would have testified to one million dollars in lost earnings)), and (2) the conclusions of the Third-Party Defendants' expert, David Duffus. The Court, however, takes issue with this evidence.

First, Mr. Hamilton's testimony is inadmissible hearsay, as he is testifying to what Mr. Curtis told him (see Reyes Aff. Ex. I, Hamilton Dep. 85-86 (stating that he learned that Dr. Goldman would have testified to one million dollars in

_____

[23] Montfort Healy asserts that Dr. Goldman's preclusion did not compel settlement because Tokio Marine approved a settlement figure of $1.4 million prior to the start of the liability phase of the trial. (Montfort Healy Mot. 15.) While this is true, "just because you have settlement authority didn't mean you're offering all the settlement authority." (Reyes Aff. Ex. I, Hamilton Dep. 42.) And, as the Court stated above, there is evidence in the record to suggest that his preclusion effectively compelled Tokio Marine to settle for that full amount--as opposed to a fraction thereof which was previously offered.

lost earnings from Mr. Cantor's status report[24] but that he did not know how Mr. Cantor acquired that information)), and the testimony is being offered for the truth of the matter asserted --i.e., that if called to testify, Dr. Goldman would have in fact conceded to at least a million dollars in damages. See FED. R. EVID. 801(c). As the Court may only rely on admissible evidence in determining whether to award summary judgment, see Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010), the Court may not consider this testimony.

Second, Mr. Curtis's statement is also inadmissible. It is unclear whether Mr. Cantor was told that Dr. Goldman would have testified to a one million dollar floor by Dr. Goldman himself (or a member of Montfort Healy's trial team) or if this was Mr. Cantor's opinion. To the extent that he was told this information by Dr. Goldman or Montfort Healy, as explained above, it is inadmissible hearsay. To the extent that this is Mr. Cantor's opinion, it is inadmissible as speculative and

---

[24] Mr. Cantor's report--the Second Updated and Revised Case Investigation and Evaluation Report--stated "our counsel advised that [Dr. Goldman] will testify at trial, if asked, that plaintiff's past and future lost earnings claim will still amount to more than $1 Million." (Petropoulos Aff. Ex. V, Case Investigation & Evaluation Report, at 13.) While the report itself may fall within the business records exception to the hearsay rule, see FED. R. EVID. 803(6), the statement regarding what Dr. Goldman told "our counsel" is inadmissible hearsay within hearsay, see FED. R. EVID. 805; see also United States v. Cruz, 894 F.2d 41, 44 (2d Cir. 1990) ("Each hearsay statement within multiple hearsay statements must have a hearsay exception in order to be admissible.").

without foundation.  See FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); see also FED. R. EVID. 701 (limiting opinion testimony of lay witnesses).  Thus, the Court cannot consider Mr. Curtis's testimony either.

Finally, the Court finds that Montfort Healy is either misrepresenting or misinterpreting Mr. Duffus's conclusions. Mr. Duffus was retained by the Third-Party Defendants to adjust Dr. Leiken's damages calculation based on the criticisms raised by Dr. Goldman.  (See Petropoulos Aff. Ex. MM, Duffus Report, at 1.)  Mr. Duffus concluded that "if all of the adjustments to the assumptions proposed by Dr. Goldman are applied to the models presented by Dr. Leiken, the resulting damages would have been in a range of approximately $1.1 million to $2.6 million." (Petropoulos Aff. Ex. MM, Duffus Report 10.)  This conclusion, however, is qualified with the following footnote:

> Note that Dr. Goldman also challenged the use of the average annual income for a general practice dentist that was obtained from both the Bureau of Labor Statistics and the American Dental Association.  However, Dr. Goldman did not suggest alternative figures.  As such, I am unable to quantify the impact on the Leiken calculation.

(Petropoulos Aff. Ex. MM, Duffus Report 10 n.18.)  Mr. Duffus's calculation failed to incorporate Dr. Goldman's criticism of the

assumption that Dr. Andreou would be able to achieve the average annual income of a general practice dentist--an assumption that Dr. Goldman concluded was "the most egregious shortcoming of Dr. Leiken's analysis" (Petropoulos Aff. Ex. TT, Goldman Report 7). Thus, the Court finds that Mr. Duffus's analysis does not support the conclusion that Dr. Goldman would have testified to one million dollars in lost income.

On the other hand, other admissible evidence in the record suggests that Dr. Goldman would not have testified to any dollar amount: (1) His report does not provide a proposed loss figure (see Petropoulos Aff. Ex. TT, Goldman Report) and (2) Mr. Larkin represented to the trial court that Dr. Goldman's report did not state an opinion as to Dr. Andreou's lost earnings (see Petropoulos Aff. Ex. BB, Trial Tr. 642 ("[H]e cannot form an opinion.")), but rather that Dr. Goldman was being offered to attack the assumptions and methodology employed by Dr. Leiken (see Petropoulos Aff. Ex. JJ, Larkin Dep. 198 ("I just wanted to use him to show how the underpinnings for the conclusion of Dr. Leiken were flawed."); Petropoulos Aff. Ex. BB, Trial Tr. 643-44 (THE COURT: So you are calling an expert to say that plaintiff's expert could not have formed an opinion? MR. LARKIN: Inferentially, yes.")). No party has deposed Dr. Goldman; therefore, whether he would have offered a proposed lost earnings figure and, if so, what that figure would have

been is completely speculative.  Accordingly, the Court rejects Montfort Healy's argument.

Thus, as there is a question of fact regarding whether Montfort Healy's alleged negligence related to Dr. Goldman's preclusion proximately caused any damages, Montfort Healy's motion for summary judgment on this claim is DENIED.

B.  Claim for Indemnification and/or Contribution

Russo's motion for summary judgment on Montfort Healy's cross-claim for indemnification and/or contribution must be GRANTED.  First, indemnification is only appropriate if the party seeking indemnification "has done no wrong."  Grodin, 2006 WL 3054321, at *3; see also supra p. 29.  Thus, if Montfort Healy is found liable, it cannot seek common law indemnification.  On the other hand, if Montfort Healy is not found liable, it cannot seek indemnification because "a valid claim for indemnity requires, at the very least, that the party seeking indemnification was held liable to the injured party." Mathis v. United Homes, L.L.C., 607 F. Supp. 2d 411, 434 (E.D.N.Y. 2009) (internal quotation marks and citation omitted). Second, Montfort Healy's cross claim appears to relate solely to any damages arising out of the malpractice claim related to the Dentrix Records.  (See generally Montfort Healy Opp. to Russo Mot., Docket Entry 165.)  As the malpractice claim arising out of the Dentrix Records has been dismissed, Montfort Healy's

cross claim must be DISMISSED AS MOOT. For the same reason, the Court hereby DISMISSES Russo's cross claims for contribution against Montfort Healy.

## CONCLUSION

For the foregoing reasons, Plaintiffs' and Defendants' motions are DENIED, Russo's motion is GRANTED, and Montfort Healy's motion is GRANTED IN PART and DENIED IN PART.

This action is REFERRED to Magistrate Judge A. Kathleen Tomlinson to set a deadline for filing a Joint Pre-Trial Order and/or to schedule a pre-trial conference. (See June 25, 2012 Electronic Order (Judge Tomlinson adjourned the deadline for filing a Joint Pre-Trial Order without date to be rescheduled after the summary judgment motions are decided).)

The Clerk of the Court is directed to terminate Russo as a Third-Party Defendant, a Cross-Claimant, and a Cross-Claim Defendant in this action.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     February __26__, 2013
           Central Islip, NY